**UNITED STATES of America,**
**Appellee,**

v.

**Gary SAHLIN, Defendant, Appellant.**

No. 04–1324.

United States Court of Appeals,
First Circuit.

Submitted Feb. 18, 2005.

Decided Feb. 22, 2005.

Mark E. Howard, Assistant United States Attorney, and Thomas P. Colantuono, United States Attorney, on brief for appellee.

Gordon R. Blakeney, Jr. on brief for appellant.

Before BOUDIN, Chief Judge, LYNCH and LIPEZ, Circuit Judges.

LYNCH, Circuit Judge.

This appeal requires us to consider the effect of the Supreme Court's decision in *United States v. Booker*, 543 U.S. ——, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), in cases involving guilty pleas.

Gary Sahlin pled guilty and was sentenced to twenty years of imprisonment

for armed bank robbery and use of a semi-automatic weapon during a crime of violence. He raises for the first time on appeal several challenges to both his guilty plea and his sentence. Sahlin argues that *Booker* entitles him to withdraw his plea of guilty because he had an erroneous understanding of the sentencing procedures, that *Booker* changed the sentencing system, and so his plea is invalid and involuntary. We hold that *Booker* provides no basis to permit a defendant who has pled guilty to withdraw his plea on the basis that it is involuntary, and we reject Sahlin's other Rule 11 arguments. We reject Sahlin's sentencing claims as well, including those based on *Booker*.

## I.

Sahlin, an ex-police officer, stole a police car and used an M–16 machine gun, which had been converted into a semi-automatic weapon, to rob a bank in Manchester, New Hampshire on August 6, 2003. He was charged with armed bank robbery under 18 U.S.C. § 2113(d), and using a machine gun during a crime of violence under 18 U.S.C. § 924(c)(1)(B)(ii). The latter count—use of a machine gun—carried with it a statutory mandatory minimum thirty-year sentence, which would have to be imposed consecutively with the bank robbery sentence.

As part of his plea agreement entered on September 22, 2003, Sahlin pled guilty to a two-count superseding information which charged armed bank robbery and the reduced charge of use of a semi-automatic assault weapon during a crime of violence, under 18 U.S.C. § 924(c)(1)(B)(i). Use of a semi-automatic weapon carried a statutory mandatory minimum consecutive

sentence of ten years, as opposed to the thirty-year mandatory minimum consecutive sentence for the machine-gun charge. The Guidelines range for the bank robbery count, given Sahlin's criminal history category of I, was thirty-three to forty-one months.

The plea agreement contained several joint stipulations: 1) The parties agreed that the weapon used in the armed robbery was a semi-automatic assault weapon; 2) the parties jointly agreed to request an upward departure under U.S.S.G. § 5K2.21,[1] based on the dismissal of the more serious machine gun charge; 3) the parties agreed that the requested departure would yield a combined sentence of twenty-five years; and 4) the parties also agreed that the government might, but was not bound to, exercise its discretion to file a motion for downward departure based on substantial assistance to the government under U.S.S.G. § 5K1.1, but that the government would not, in any event, recommend a sentence lower than 20 years. Sahlin could request a greater departure than that requested by the government. The government did file for a § 5K1.1 departure.

At Sahlin's February 17, 2004 sentencing hearing, the district court questioned the methodology agreed to by the parties in calculating the term of the sentence. The court correctly pointed out that, under *United States v. Harotunian,* 920 F.2d 1040, 1042–44 (1st Cir.1990), it could not depart both upward and downward, as the plea agreement contemplated. The district court solved the problem by taking into account both the reasons for upward departure (the dropping of the more seri-

---

1. Section 5K2.21 states:
   The court may depart upward to reflect the actual seriousness of the offense based on conduct

1) underlying a charge dismissed as part of the plea agreement in the case . . .; and
2) that did not enter into the determination of the applicable guideline range.

ous machine gun charge pursuant to the plea agreement) and the reasons for downward departure (the defendant's substantial assistance) in deciding the degree to which it would depart upward. The court departed upward under § 5K2.21 on the armed robbery charge to a sentence of 120 months, and then imposed the mandatory minimum consecutive sentence of 120 months for the gun charge, for a total sentence of twenty years, a highly favorable outcome for Sahlin given the plea agreement. Sahlin did not object at sentencing to the district court's means of calculating the sentence or to its ultimate sentencing decision.

## II.

Each of Sahlin's arguments challenging the plea and the sentence are made for the first time on appeal.

He first argues that his plea was wrongly accepted, because it was based on his understanding of sentencing procedures, which was rendered erroneous by *Booker*. He argues that he agreed to plead guilty in part based on his understanding of the risks he faced being sentenced by a judge under a mandatory guidelines system, but that *Booker* renders that understanding false, and thus undermines the validity of his plea.

Sahlin further argues that his guilty plea was entered in violation of Fed.R.Crim.P. 11 because the district court did not explain to him at his *change of plea* hearing that it could not both depart upward and downward, which is what the plea agreement contemplated, and that when *at sentencing* the court explained this, it was obligated not to allow him to enter a plea of guilty. Finally, he argues that the district court erred by not disclosing to him

at his change of plea hearing that the sentence for the gun count had to be imposed consecutively to the sentence for the bank robbery count.

Sahlin also attacks his sentence. Sahlin argues that the § 5K2.21 enhancement was plain error, as it was arrived at via judicial factfinding by a preponderance of the evidence, allegedly in violation of *Booker*. He next argues that the district court erred in departing upward under § 5K2.21 for dismissed or uncharged conduct, because that conduct was based on a factual finding (that the gun was a machine gun) directly contradicted by a mutual stipulation in the agreement (that the gun was a semi-automatic assault weapon) which was binding on the district court.

## III.

### A. *Claims Attacking Sahlin's Guilty Plea*

### 1. *Booker Claim That Defendant's Plea Should Be Vacated*

■ We reject Sahlin's claim that he should be permitted to withdraw his guilty plea because it was not voluntary, being based on an understanding of a sentencing scheme rendered erroneous by *Booker*.[2] In ordinary circumstances *Booker* provides no basis to vacate the entry of a pre-*Booker* guilty plea on grounds of lack of voluntariness.

*Booker* reaffirmed the Court's holding in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt," but did

---

2. Sahlin's plea agreement did not include any waiver of his right to appeal. *See United*

*States v. Teeter*, 257 F.3d 14, 21–24 (1st Cir. 2001).

so only insofar as the sentence resulted from a mandatory system imposing binding requirements on sentencing judges. *Booker*, —— U.S. at ——, 125 S.Ct. at 756. Justice Stevens' opinion for the Court stressed that it was the *mandatory* nature of the Guidelines which raised constitutional concerns. *Id.* at 749–50.

The Court, as part of its remedy, struck two provisions from the Guidelines. It excised from the statute 18 U.S.C. § 3553(b)(1), which had mandated judges to sentence within the guidelines range. *Id.* at 765. It also excised 18 U.S.C. § 3742(e), which gave the courts of appeals de novo review over certain aspects of sentencing. *Id.* The remainder of the Guidelines are intact and must be considered.

■■■ Sahlin argues that *Booker* renders his plea involuntary. Although a guilty plea waives all independent non-jurisdictional claims of error, *see Tollett v. Henderson*, 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973), it does not preclude an attack on the plea's voluntariness *Id.* It is difficult to see how Sahlin's circumstances show that his plea was anything but voluntary. He was in fact sentenced under the mandatory scheme that he expected. And the possibility of a favorable change in the law occurring after a plea is one of the normal risks that accompany a guilty plea. *See Brady v. United States*, 397 U.S. 742, 757, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970) ("[A] voluntary plea of guilty intelligently made in the light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise."); *United States v. Parsons*, 396 F.3d 1015 (8th Cir.2005).[3] It does not

mean that Sahlin was coerced or pressured into pleading guilty. This argument is frivolous.

### 2. *Claimed Rule 11 Violations*

■■■ Claimed irregularities in the plea-taking proceeding, provided they do not involve a total failure to address core concerns of Rule 11, will only result in a guilty plea being overturned if those irregularities affected the defendant's "substantial rights." Fed.R.Crim.P. 11(h); *United States v. Cotal–Crespo*, 47 F.3d 1, 4–5 (1st Cir.1995).

Sahlin argues that the district court erred in not explaining during his Rule 11 colloquy at the change of plea hearing that, under *Harotunian*, it could not depart both upward and downward as the plea agreement contemplated, and erred in not allowing him the opportunity to withdraw his guilty plea at sentencing after the *Harotunian* issue was explained. Sahlin has certainly forfeited the argument, and may have waived it as well by taking advantage of the court's procedure to obtain the sentence he wanted. *See United States v. Vazquez–Molina*, 389 F.3d 54, 57 (1st Cir.2004) (explaining difference between waiver and forfeiture in sentencing context).

At Sahlin's sentencing hearing, the court stated that, in light of *Harotunian*, rather than departing upward to twenty-five years and considering a downward departure for substantial assistance, as the plea agreement contemplated, it would consider Sahlin's substantial assistance in deciding the extent to which it would depart upward. The court expressly afforded counsel the opportunity to object to this proce-

---

**3.** While Sahlin does not specifically argue that *Booker* rendered his plea not knowing, *Brady* also makes clear that a subsequent judicial decision changing the relevant sen-

tencing law does not permit an attack on whether the plea was knowing. *Brady*, 397 U.S. at 757, 90 S.Ct. 1463.

dure, and Sahlin's counsel did not do so. After hearing arguments concerning Sahlin's substantial assistance, the court sentenced Sahlin to twenty years, five years less than the maximum authorized by the plea agreement. The court again gave Sahlin's counsel an opportunity to object, and counsel stated he had no objections. Sahlin was given ample notice of the sentencing procedure the district court was to use in order to carry out the terms of the plea agreement, and ample opportunity to bring a motion to the district court to withdraw his plea if he thought that procedure was violative of the plea agreement. In any event, Sahlin clearly understood what was happening and this claim is without merit.

Sahlin secondly argues that his plea should be vacated because the district court did not disclose to him that the mandatory minimum sentence for the gun count was consecutive to the sentence for the bank robbery count. This assertion is simply untrue. During his Rule 11 colloquy at his change of plea hearing, the court, after explaining the potential sentences for the two counts to which Sahlin was pleading guilty, expressly asked Sahlin: "And do you understand that any sentence imposed under Count 2 must be imposed consecutively to that imposed in Count 1?" Sahlin replied "Yes, sir." This is more than adequate disclosure, and Sahlin's claim must fail.

## IV.

### A. *Sentencing Claims*

■ The mere entry of a guilty plea is not a waiver of defendant's challenges to a sentence. *See United States v. Cordero,* 42 F.3d 697, 699 (1st Cir.1994).

### 1. *Booker Sentencing Claim*

■ Sahlin makes a peculiar type of *Booker* claim as to sentencing. He wants to use *Booker* to vacate only that portion of

his sentence due to the enhancement, on the basis that either the jury should have decided the facts leading to the enhancement, or the judge should have done so by proof beyond a reasonable doubt. Eliminating the enhancement would have the effect of reducing his sentence from 20 years to approximately 13 years. He does not seek to vacate the entire sentence and send it back for resentencing in a post-*Booker* non-mandatory guidelines sentencing regime.

He waived, with his plea, the right to have a jury decide the issue. His claim that the judge should have found the predicate facts for the enhancement by proof beyond a reasonable doubt is foreclosed by the fact that he stipulated to the application of the enhancement in his plea agreement. In fact, his stipulation to the application of the enhancement, as well as the increase in sentence as a result of the enhancement, undermines the very factual predicate for his argument: that the district court engaged in fact finding in applying this enhancement. Under Fed. R.Crim.P. 11:

> If the defendant pleads guilty or nolo contendere to a charged offense or a lesser or related offense, the plea agreement may specify that an attorney for the government will ... agree that a specific sentence or sentencing range is the appropriate disposition of the case, or that a particular provision of the Sentencing Guidelines, or policy statement, or sentencing factor does or does not apply (such a recommendation or request binds the court once the court accepts the plea agreement).

Fed.R.Crim.P. 11(c)(1). Thus, when Sahlin and the government jointly stipulated both to the enhancement and the sentencing increase resulting from the enhancement, the district court was bound by this stipulation once it accepted the plea agreement. It did not, then, engage in fact

finding in order to apply the enhancement, it merely applied the terms of the plea agreement, to which it was bound.

Further, even if Sahlin could make out a claim of error, because he agreed to the enhancement, there is no possible claim of prejudice. This is particularly so given that he stipulated that the enhancement would result in an overall sentence of twenty-five years, and yet the court only sentenced him to twenty years.

2. *Propriety of U.S.S.G. § 5K2.21 Upward Departure*

The district court did not err in departing upward under § 5K2.21 based on the machine gun charge that was dismissed as part of Sahlin's plea agreement. Sahlin expressly stipulated to this departure in the terms of his plea agreement, and agreed that the district court would be bound by this stipulation. He has waived the issue he now seeks to argue.

Further, as a matter of fact, at Sahlin's change of plea hearing, the government expressly stated that "[t]here can be no doubt that the weapon used by Mr. Sahlin during the course of the armed robbery was a military weapon. It was a fully automatic machine gun." The government then explained that the gun had been converted to a semi-automatic weapon by the Manchester Police Department, but could have been converted back to fully automatic. Under the relevant definitional statute, a "machine gun" is "any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot. . . ." 26 U.S.C. § 5845. There was no possible prejudice.

*Conclusion*

Sahlin's conviction and sentence are *affirmed.*