421 F.3d 118
 THE UNITED STATES of America, Appellee,
v.
Oscar ROQUE, also known as Gary Cuba, also known as Bigote, Alcibiades Fernandez, Milagros Fernandez and Eddie Capellan, Defendants,
Jose Saldana and Aguiberto Delahoz, also known as Danny Montero, also known as Danny Nuñez, Defendants-Appellants.
 Docket No. 03-1452L.
 Docket No. 03-1490CON.
 United States Court of Appeals, Second Circuit.
 Argued: March 15, 2005.
 Decided: August 26, 2005.
 
 Cheryl J. Sturm, Chadds Ford, PA, for Defendant-Appellant Jose Saldana.
 Robert A. Culp, New York, NY, for Defendant-Appellant Aguiberto Delahoz.
 Joshua A. Goldberg, Assistant United States Attorney (Helen V. Cantwell, Assistant United States Attorney, of counsel; David N. Kelley, United States Attorney for the Southern District of New York, on the brief), New York, NY, for Appellee.
 Before: STRAUB and WESLEY, Circuit Judges, SESSIONS, Chief Judge.*
 STRAUB, Circuit Judge.
 
 
 1
 Saldana and co-defendant Delahoz seek relief on various grounds. In a summary order filed concurrently with this opinion we reach all but one of those issues. Here, we address Saldana's request[1] to withdraw his plea of guilty because entered into in the false belief that the United States Sentencing Guidelines were mandatory. In light of the Supreme Court's decision in Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970), and consistent with our opinions in United States v. Morgan, 386 F.3d 376 (2d Cir.2004) ("Morgan I"), cert. denied, ___ U.S. ___, 125 S.Ct. 1354, 161 L.Ed.2d 147 (2005), United States v. Morgan, 406 F.3d 135 (2d Cir.2005) ("Morgan II"), petition for cert. filed, (July 19, 2005) (No. 05-5466), and United States v. Haynes, 412 F.3d 37 (2d Cir.2005), we hold that Saldana may not withdraw his plea as unintelligent, involuntary, or otherwise illegal, based solely on changes in federal law effected by United States Supreme Court's decision in United States v. Booker, ___ U.S. ___, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). We therefore affirm, in part. In a summary order filed concurrently with this opinion we dismiss, in part.
 
 BACKGROUND
 
 2
 Saldana pleaded guilty to part of a multiple-count indictment directed at members of a robbery crew active in New York and New Jersey from March to December 1999. In particular, Saldana pleaded guilty for his part in the December 22, 1999, armed robbery of a home located in Clifton, New Jersey.
 
 
 3
 The victims of the December 22, 1999, robbery were a couple who, the crew was led to believe, had a large amount of cash in their home as proceeds of the sale of a grocery business. On December 22, Saldana and another member of the crew, known as "CC," drove to the victims' house. CC, posing as a police officer, was invited in. Once inside, he radioed Saldana, who was waiting outside. Saldana joined CC in the house. Both perpetrators produced firearms. The victims were threatened with death and bodily harm, were physically assaulted, and, eventually, were bound. Saldana and CC searched the house but left with only $8000 in cash, some jewelry, and a .38 caliber handgun that belonged to the victims. Saldana was later apprehended by local law enforcement in the Bronx, New York, while in possession of the .38 caliber handgun stolen during the December 22 robbery.
 
 
 4
 On July 25, 2002, Saldana was indicted on part of a multiple-count indictment directed at several members of the crew and encompassing a number of robberies, including the December 22, 1999, robbery. After negotiating with the government, Saldana agreed to plead guilty to counts sixteen, nineteen, and twenty of the indictment, for conspiracy to commit robbery in violation of 18 U.S.C. § 1951, robbery in violation of 18 U.S.C. §§ 1951 and 1952, and use of a firearm in furtherance of a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(ii), and (c)(2).
 
 
 5
 As part of his plea agreement, Saldana stipulated to a detailed sentencing calculation reached under the then-mandatory United States Sentencing Guidelines. For Saldana, the stipulated Guidelines range was 125 to 135 months' imprisonment. Saldana and the government further agreed that neither downward nor upward departure from that range was appropriate; and Saldana agreed to waive his right to appeal from any sentence imposed that fell within the stipulated range.
 
 
 6
 Consistent with his agreement, Saldana pleaded guilty to violations of the counts described above. During its Rule 11, Fed.R.Crim.P., colloquy with the Saldana, the District Court took admirable care to confirm Saldana's understanding that it was obliged to apply in mandatory fashion the United States Sentencing Guidelines; that Saldana had stipulated to a Guidelines calculation that would lead to a sentence of 125 to 135 months' imprisonment; that Saldana was waiving his right to appeal any sentence in that range, even if reached in error; and that, if the District Court imposed a sentence of more than 135 months' imprisonment, then Saldana would still be bound by his guilty plea.
 
 
 7
 Saldana demonstrated that he understood these terms and stated his desire to plead guilty. He did so. The District Court subsequently entered a judgment of conviction and imposed a sentence of 135 months' imprisonment to be followed by a three-year term of supervised release. Saldana, through counsel, filed timely notice of appeal. Saldana now seeks to withdraw his plea as not knowing, intelligent, or voluntary because it was entered on the false assumption that the United States Sentencing Guidelines were mandatory rather than advisory. We find that this argument is without merit and affirm, in part. Other asserted grounds of relief are addressed in a summary order filed in conjunction with this opinion, in which we dismiss, in part.
 
 DISCUSSION
 
 8
 The issue presented to us here is whether a defendant who, prior to January 12, 2005, entered into an otherwise enforceable plea agreement, which included a waiver of right to appeal a sentence, may seek to withdraw his plea based on an alleged mistake as to the mandatory nature of the United States Sentencing Guidelines. We hold that he may not.
 
 
 9
 Prior to June 24, 2004, neither statute nor precedent gave courts, counsel, or defendants reason to doubt that the United States Sentencing Guidelines were to be applied mandatorily in federal courts. On June 24, 2004, the Supreme Court decided Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), holding unconstitutional provisions of the Washington State Sentencing Reform Act that allowed a sentencing judge, based only on independent findings of fact not presented to a jury or determined to be true beyond a reasonable doubt, to impose a term of imprisonment of length greater than the maximum term to which a defendant would otherwise be subject under the Act. While Washington's sentencing scheme bore significant resemblance to the United States Sentencing Guidelines, prior precedents of this Court and other courts of appeals had held that judicial fact-finding to support enhancements of sentences under the Guidelines did not offend the Sixth Amendment. See United States v. Mincey, 380 F.3d 102, 105-06 (2d Cir.2004) (per curiam). Relying on these precedents, and on language in Blakely indicating that the Supreme Court did not, in that case, express a view on the constitutionality of the Guidelines, we held in Mincey that "until the Supreme Court rules otherwise, the courts of this Circuit will continue fully to apply the Guidelines." Id. at 106.
 
 
 10
 The entire landscape of federal sentencing changed on January 12, 2005, with the Supreme Court's decision in United States v. Booker, ___ U.S. ___, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). There, the Court not only held that imposition of sentencing enhancements based on judicial fact finding is contrary to the Sixth Amendment in circumstances where the enhancement leads to a sentence in excess of the applicable pre-enhancement Guidelines range; it also held that the only way to cleanse the United States Sentencing Guidelines of this taint was to excise portions of the enabling statutes, rendering the Guidelines advisory rather than mandatory. 125 S.Ct. at 765.
 
 
 11
 In United States v. Crosby, 397 F.3d 103 (2d Cir.2005), we held that constitutional violations identified by the Booker holding and procedural errors implied by the Booker remedy were best remedied by remand to the sentencing court in consideration of resentencing. In Morgan II, we held that a defendant who has pleaded guilty pursuant to a plea agreement that includes an enforceable waiver of right to appeal sentence may not challenge his sentence based on the subsequent revelations in Booker. 406 F.3d at 138. We declined, however, to reach the question as to whether a defendant who, prior to Booker, pleaded guilty pursuant to an agreement that included a waiver of right to appeal sentence may seek to withdraw his plea based on alleged mistake as to the mandatory nature of the United States Sentencing Guidelines. Id. at 136 n. 1. We reach that issue today and, consistent with Morgan II and our recent decision in United States v. Haynes, 412 F.3d 37 (2d Cir.2005) (per curiam), hold that a defendant who, prior to January 12, 2005, entered an otherwise enforceable plea agreement that included a waiver of right to appeal a sentence may not seek to withdraw his plea based on alleged mistake as to the mandatory nature of the United States Sentencing Guidelines.
 
 
 12
 The waiver at issue here is found in a September 17, 2002, letter to which the government, Saldana, and counsel for Saldana are each signatory. After describing the relevant counts of the indictment, the letter recites a Guidelines calculation that arrives at a sentencing range of 125 to 135 months. The letter sets forth the parties' agreement that neither enhancement nor downward departure is appropriate and goes on to state that "[i]t is further agreed that the defendant will not file a direct appeal, nor litigate under Title 28, United States Code, Section 2255 and/or Section 2241, any sentence within or below the Stipulated Sentencing Guidelines Range of 125 to 135 months. . . . This provision is binding on the parties even if the Court employs a Guidelines analysis different from that stipulated herein."
 
 
 13
 This waiver is in a familiar form that we have consistently held enforceable. See United States v. Martinez-Rios, 143 F.3d 662, 668 (2d Cir.1998). It does not, however, act as a waiver against an appeal on the basis that the plea itself, including the waiver, was not intelligent or voluntary. See United States v. Gomez-Perez, 215 F.3d 315, 319 (2d Cir.2000) (citing United States v. Ready, 82 F.3d 551, 556-57 (2d Cir.1996)). This is precisely the ground upon which Saldana rests this portion of his appeal.
 
 
 14
 To be enforceable, guilty pleas and waivers of right to appeal sentence must be knowing and voluntary. Martinez-Rios, 143 F.3d at 668. Saldana argues that his capacity to enter knowingly and voluntarily into the agreement was limited by imperfect knowledge at the time the agreement was reached. Specifically, he claims that his mistaken belief, shared by the government and the District Court, that the Guidelines were mandatory rather than advisory, limited his capacity to freely and intelligently enter into the bargain and voids the agreement for mutual mistake. We find these arguments unpersuasive.
 
 
 15
 First, Saldana's plea and waiver of right to appeal sentence were entered voluntarily. A plea of guilty is deemed involuntary, and therefore void, if it is "the product of actual or threatened physical harm, mental coercion overbearing the defendant's will, or the defendant's sheer inability to weigh his options rationally." Miller v. Angliker, 848 F.2d 1312, 1320 (2d Cir.1988), cert. denied, 488 U.S. 890, 109 S.Ct. 224, 102 L.Ed.2d 214 (1988). The record before us discloses no such conditions. There is no evidence of force, coercion, or compulsion. There is no evidence that incapacity or other conditions affected Saldana's capacity to consider rationally the benefits and costs of his plea. While, as we shall discuss, ignorance of rights may affect the intelligence of a plea, ignorance of the future changes to federal sentencing law brought forth by Booker does not constitute an independent force that might render Saldana's plea involuntary. See United States v. Sahlin, 399 F.3d 27, 31 (1st Cir.2005).
 
 
 16
 Saldana's plea and waiver were also knowing and intelligent. "[A] waiver is only knowing or informed if the defendant fully understood the consequences of the waiver," Ready, 82 F.3d at 557 (internal quotation marks omitted); and ignorance of existing rights may void a plea agreement and a waiver of appellate rights. See generally Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); Haynes, 412 F.3d 37; Ready, 82 F.3d at 556-57. There is, however, no evidence on this record to suggest that Saldana was ignorant of his legal and constitutional rights in their then-present state.
 
 
 17
 The terms of Saldana's plea, including the waiver, are set forth in detail and in writing in the September 17, 2002, letter. In addition, the District Court took great care to confirm that Saldana understood the terms of the waiver and was entering his plea voluntarily. At the plea hearing, Saldana was sworn and testified that the letter had been read to him in his native language before he signed it. The District Court reviewed with Saldana the terms of the letter, including the stipulated Guidelines range. The Court took particular care with respect to the waiver of right to appeal sentence, repeating three times the point that Saldana was waiving all rights to appeal any sentence within the stipulated range, even if the sentence imposed was reached in error or was more severe than was called for under the Guidelines. Each time Saldana confirmed that he understood. On this record, we have no doubt that Saldana understood fully that, as a consequence of entering into this plea agreement, he would have no right to appeal the imposition of a sentence of 125 to 135 months' imprisonment. See United States v. Green, 405 F.3d 1180, 1190 (10th Cir.2005) (upholding a waiver of right to appeal sentence based on clarity of the waiver and in-court colloquy).
 
 
 18
 Waivers of right to appeal sentence also do not bar appeals based on structural errors, such as the imposition of a sentence based on racial or national bias. Haynes, 412 F.3d 37; Gomez-Perez, 215 F.3d at 319; United States v. Jacobson, 15 F.3d 19, 23 (2d Cir.1994). The error here does not rise to this level, however. See United States v. Martinez-Lugo, 411 F.3d 597 (5th Cir.2005); United States v. White, 405 F.3d 208, 221-22 (4th Cir.2005); United States v. Gonzalez-Huerta, 403 F.3d 727, 734 (10th Cir.2005) (en banc). There is no constitutional prohibition against sentences assigned in accordance with a mandatory sentencing scheme; the present prohibition against assigning mandatory sentences under the United States Sentencing Guidelines is merely a procedural entitlement derived from the Supreme Court's election of remedies in Booker. See United States v. Crosby, 397 F.3d 103, 114-15 (2d Cir.2005); see also Gonzalez-Huerta, 403 F.3d at 732 (referring to mandatory application of Guidelines as "non-constitutional Booker error" where Sixth Amendment violation was not alleged). Commenting on a similar situation, the Supreme Court in Brady v. United States pointed out that "a voluntary plea of guilty intelligently made in light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise." 397 U.S. 742, 757, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). That rule is equally applicable in the present circumstance. Saldana's plea was voluntary and was made with full knowledge of federal sentencing law in force at the time. Intervening changes in federal sentencing law do not provide warrant for withdrawal. Id.; Green, 405 F.3d at 1190-91.
 
 
 19
 Saldana contends that the bargain underlying his plea is void for mutual mistake. We have previously held that it is appropriate to "examine plea bargains using principles of contract law." United States v. Brunetti, 376 F.3d 93, 95 (2d Cir.2004). Viewing this plea agreement as a contract, we agree that certain conditions have changed since the bargain was struck. We further acknowledge that, had the parties known what they know now, after Booker, they might have bargained differently and might even have reached a different bargain. This is simply not relevant to whether Saldana's plea is enforceable, however.
 
 
 20
 Saldana understood fully the consequences of his bargain, both in terms of what he was gaining and what he was giving up. He "gain[ed] reasonable certainty as to the extent of his liability and punishment." United States v. Rosa 123 F.3d 94, 97 (2d Cir.1997); see also United States v. Morgan, 406 F.3d 135, 137 (2d Cir.2005) ("Morgan II"), petition for cert. filed, (July 19, 2005) (No. 05-5466). He gave up the right to challenge, for any reason, a sentence within the stipulated range. See Morgan II, 406 F.3d at 137; United States v. Salcido-Contreras, 990 F.2d 51, 53 (2d Cir.1993) (per curiam) ("In no circumstances. . . may a defendant, who has secured the benefits of a plea agreement and knowingly and voluntarily waived the right to appeal a certain sentence, then appeal the merits of a sentence conforming to the agreement. Such a remedy would render the plea bargaining process and the resulting agreement meaningless."). Further, in opting for certainty, both parties accepted the risk that conditions relevant to their then-contemporary bargain, including federal sentencing law, might change. See Brady, 397 U.S. at 757, 90 S.Ct. 1463; Morgan II, 406 F.3d at 137 ("[T]he possibility of a favorable change in the law after a plea is simply one of the risks that accompanies pleas and plea agreements.").
 
 
 21
 The fact that Saldana did not anticipate the changes in federal sentencing law and practice produced by Booker "does not impugn the truth or reliability of his plea," and Saldana "is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended. . . the likely penalties attached to alternative courses of action." Brady, 397 U.S. at 757, 90 S.Ct. 1463; see also Garcia-Santos v. United States, 273 F.3d 506, 509 (2d Cir.2001). Saldana struck a deal. He got the benefits of that deal. "Contractual principles [simply] do not support [his] attempt to have his cake and eat it, too." Salcido-Contreras, 990 F.2d at 52.
 
 
 22
 In Haynes we stated that a defendant may not seek relief from his pre-Booker plea and waiver of right to appeal sentence based solely on the fact that, at the time, he believed that the United States Sentencing Guidelines were mandatory rather than advisory. We affirm that view here and hold that an otherwise valid plea agreement and waiver of right to appeal sentence, entered into before January 12, 2005, is enforceable even if the parties, at the time they entered into the agreement, erroneously believed that the United States Sentencing Guidelines were mandatory rather than advisory. In so holding, we join several of our sister circuits which have held that pre-Booker plea agreements are not void for the intervening change in federal sentencing law occasioned by Booker. See, e.g., United States v. Reeves, 410 F.3d 1031, 1035 (8th Cir.2005); United States v. Lockett, 406 F.3d 207, 213 (3d Cir.2005); United States v. Porter, 405 F.3d 1136, 1145 (10th Cir.2005); United States v. Sahlin, 399 F.3d 27, 30-31 (1st Cir.2005); see also United States v. Bradley, 400 F.3d 459, 463-65 (6th Cir.2005) (rejecting request for remand for resentencing but addressing validity of plea agreement), petition for cert. filed, (June 9, 2005) (No. 04-10620).
 
 
 23
 Saldana voluntarily entered into a plea agreement that included a waiver of right to appeal his sentence. He received a term of imprisonment that fell within the range specified by his waiver. For the reasons set forth above, the Supreme Court's subsequent decision in Booker does not render the plea or the waiver involuntary, unintelligent, or otherwise unenforceable.
 
 CONCLUSION
 
 24
 For the foregoing reasons, we hold that Saldana's plea and waiver of right to appeal sentence, entered prior to January 12, 2005, are not subject to withdraw or vacatur based on intervening changes in federal sentencing law. We therefore affirm, in part. In a summary order filed with this opinion we dismiss, in part.
 
 
 
 Notes:
 
 
 *
 The Hon. William K. Sessions, III, Chief Judge, United States District Court for the District of Vermont, sitting by designation
 
 
 [1]
 In his brief filed in this Court Delahoz joins in arguments made by Saldana to the extent that they are applicable to him. While Saldana's request to withdraw his plea is not, as a matter of logic, inconsistent with arguments advanced by Delahoz on appeal, it may be inconsistent with Delahoz's goals and interests. We addressed the issue with counsel at oral argument. At that time, counsel stated that Delahoz did not seek to withdraw his plea. Were counsel or Delahoz to have a change of heart, we note that our holding here would apply equally to Delahoz