RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 22a0094p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

MARLON PORTIS, JR. (20-3776); DEMONTE THOMPSON (20-3780),

          *Petitioners-Appellants*,

    *v.*

UNITED STATES OF AMERICA,

          *Respondent-Appellee*.

Nos. 20-3776/3780

─────────────────

Appeal from the United States District Court for the Northern District of Ohio at Cleveland.
Nos. 1:12-cr-00131, 1:20-cv-00760 (Portis), and 1:20-cv-00763 (Thompson);
Patricia A. Gaughan, Chief District Judge.

Decided and Filed:  May 3, 2022

Before:  SUTTON, Chief Judge; McKEAGUE and WHITE, Circuit Judges.

─────────────────

## COUNSEL

**ON BRIEF:**  Vanessa Faye Malone, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Akron, Ohio, for Appellants.  Kelly L. Galvin, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Respondent.

    SUTTON, C.J., delivered the opinion of the court in which McKEAGUE, J., joined. WHITE, J. (pp. 11–16), delivered a separate dissenting opinion.

─────────────────

## OPINION

─────────────────

    SUTTON, Chief Judge.  Marlon Portis and Demonte Thompson pleaded guilty to conspiring to rob electronics stores and to using firearms in the process.  The plea agreements prohibited the defendants from bringing direct or collateral challenges to their convictions.

Relying on a later U.S. Supreme Court decision that limited what offenses qualify as crimes of violence, *United States v. Davis*, 139 S. Ct. 2319, 2336 (2019), they filed these collateral challenges to their firearms convictions under § 2255, claiming that this change in law permits them to sidestep the plea agreements' prohibitions on bringing collateral challenges to their convictions. Because they knowingly and voluntarily waived these challenges in their plea agreements and because later developments in the law do not permit the parties to the contract—whether the government or a criminal defendant—to back out of their obligations, *see United States v. Bradley*, 400 F.3d 459, 463 (6th Cir. 2005), we dismiss their appeals.

I.

In 2011, Portis and Thompson committed a series of robberies. A federal grand jury indicted them on one count of conspiring to commit a Hobbs Act robbery, two counts of robbery under the Hobbs Act, and two counts of using a firearm during a crime of violence.

Under virtually identical written plea agreements, they each pleaded guilty to one count of conspiring to commit a Hobbs Act robbery and one count of using a firearm during a crime of violence. *See* 18 U.S.C. § 924(c). As part of each agreement and in return for the government's withdrawal of the two Hobbs Act robbery counts and one of the firearm counts, Portis and Thompson "expressly and voluntarily waive[d]" their rights to appeal their convictions or to challenge their convictions through a postconviction proceeding, "including a proceeding under 28 U.S.C. § 2255." R.102 at 10; R.101 at 10. Both defendants reserved the right to appeal if they received sentences that exceeded "the statutory maximum" or the Sentencing Guidelines range. R.102 at 10; R.101 at 10. And both retained their rights to pursue claims of ineffective assistance of counsel or prosecutorial misconduct. The district court accepted their pleas after a plea colloquy that confirmed they understood they were waiving their rights to appeal and to bring postconviction challenges.

Seven years after their convictions, the Supreme Court determined that § 924(c)'s residual clause was unconstitutionally vague. *United States v. Davis*, 139 S. Ct. 2319, 2336 (2019). The decision narrowed the types of offenses that qualify as "crimes of violence" under § 924(c), ultimately requiring the government to prove that a defendant met the requirements of

the statute's elements clause. *Davis*, we have held, applies retroactively. *In re Franklin*, 950 F.3d 909, 911 (6th Cir. 2020) (per curiam). Since *Davis*, we have limited the statute's application further, ruling that a conspiracy to commit Hobbs Act robbery does not count as a predicate "crime of violence" for § 924(c) purposes, whether under the residual clause or the elements clause. *United States v. Ledbetter*, 929 F.3d 338, 361 (6th Cir. 2019).

After these developments, Portis and Thompson sought relief under § 2255. Once in the district court, they argued that their conspiracy convictions served as the predicate offenses for their § 924(c) convictions. Because Hobbs Act conspiracies no longer qualify as crimes of violence, they asked the district court to vacate their § 924(c) convictions. The government responded that the men waived their rights to file § 2255 motions, and that in any event the robberies (rather than the conspiracy) served as the predicate offenses. The district court denied the motions on the merits, concluding that the robberies served as the predicate offenses and opting not to enforce the § 2255 motion waiver. Portis and Thompson now appeal.

## II.

We begin and end with the plea agreement. In no uncertain terms, it waives each defendant's right to challenge his convictions in "a proceeding under 28 U.S.C. § 2255." R.101 at 10; R.102 at 10. A defendant may waive any right, even a constitutional one, in a plea agreement, if he relinquishes that right knowingly and voluntarily. *See Brady v. United States*, 397 U.S. 742, 748 (1970). It follows that a defendant may waive his right to bring future postconviction challenges, which are not constitutionally required, so long as the waiver is knowing and voluntary. *Watson v. United States*, 165 F.3d 486, 489 (6th Cir. 1999).

Such waivers are not without limit. We will not enforce them if counsel provided constitutionally ineffective assistance or if the government breached the agreement, and we will not enforce waivers infected by race discrimination. *See United States v. Ferguson*, 669 F.3d 756, 764, 767 (6th Cir. 2012); *United States v. Swanberg*, 370 F.3d 622, 627–28 (6th Cir. 2004). The process leading to the waiver also must be fair and comply with Rule 11 of the Federal Rules of Criminal Procedure. But neither defendant challenges the waiver on any of these grounds. They do not complain about the process leading to the plea agreement. They do not

challenge the plea colloquy.  They do not deny that they knowingly and voluntarily entered the plea agreement in return for the government's decision to drop several counts against them.  And they do not claim that counsel provided constitutionally ineffective assistance or that the waiver was premised on race discrimination.

That leaves two other possibilities for challenging their convictions.  One, they say, is that the § 2255 waiver does not apply if later changes in the law might benefit them.  The other, they say, is that the limitation in the agreement to sentences below "the statutory maximum" permits them to seek relief here.  Regrettably for Portis and Thompson, neither option works.

As to the first option, waivers of the right to bring postconviction challenges remain enforceable after changes in law, here the *Davis* decision.   Subsequent "developments in the law" that would make a right to bring a postconviction challenge more valuable do not "suddenly make the plea involuntary or unknowing or otherwise undo its binding nature." *United States v. Bradley*, 400 F.3d 459, 463 (6th Cir. 2005).  Any "waiver[ ] of the right to appeal," we have explained, "would amount to little if future changes in the law permitted the benefited party nonetheless to appeal." *Id.* at 465.  "Plea bargains always entail risks," but they "allocate[] risk between the two parties as they see fit." *Id.* at 464.  And "[i]f courts disturb the parties' allocation of risk in an agreement, they threaten to damage the parties' ability to ascertain their legal rights when they sit down at the bargaining table." *Id.*  "[M]ore problematically for criminal defendants," when courts throw out mutually beneficial plea agreements, it may "reduce the likelihood that prosecutors will bargain away counts." *Id.*

The principle that future changes in law do not vitiate collateral-challenge waivers is mainstream.  In *Brady v. United States*, 397 U.S. 742 (1970), the defendant pleaded guilty to a crime that came with exposure to a life sentence in order to avoid the risk of a death sentence, only to watch the threat of enforcement of the death-penalty provision disappear when the provision was declared unconstitutional.  The Court held the defendant to his bargain despite the change in law and despite the reality that the plea turned on a mistaken assumption about the (later) meaning of the law. *See id.* at 750.  "[A] voluntary plea of guilty intelligently made in the light of the then applicable law," the Court reasoned, "does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise." *Id.* at 757; *see also United*

*States v. Ruiz*, 536 U.S. 622, 630 (2002) (noting that courts may accept guilty pleas regardless of "various forms of misapprehension under which a defendant might labor," including lack of "complete knowledge of the relevant circumstances," potential evidentiary rulings at trial, and later changes in the law).

All circuits to our knowledge follow this principle of plea-bargaining law. *See United States v. Sahlin*, 399 F.3d 27, 31 (1st Cir. 2005); *United States v. Riggi*, 649 F.3d 143, 149 n.7 (2d Cir. 2011); *United States v. Lockett*, 406 F.3d 207, 213–14 (3d Cir. 2005); *United States v. Blick*, 408 F.3d 162, 173 (4th Cir. 2005); *United States v. Barnes*, 953 F.3d 383, 387–88, 388 n.9 (5th Cir. 2020); *United States v. Bownes*, 405 F.3d 634, 636–37 (7th Cir. 2005); *United States v. Cooney*, 875 F.3d 414, 416 (8th Cir. 2017); *United States v. Johnson*, 67 F.3d 200, 202–03 (9th Cir. 1995); *United States v. Porter*, 405 F.3d 1136, 1145 (10th Cir. 2005); *United States v. Masilotti*, 565 F. App'x 837, 839–40 (11th Cir. 2014) (per curiam).

This settled law and this plea agreement leave no room for the first way of thinking about Portis and Thompson's argument. The two defendants expressly waived their rights to bring collateral challenges, and the waiver was knowing and voluntary. The written plea agreement made clear that it waived the right to bring a "§ 2255" petition. During their plea hearings, both men confirmed that they understood that they were waiving their rights to bring postconviction challenges. Because their waivers of postconviction challenges under § 2255 were knowing and voluntary, their plea agreements preclude this challenge.

Were the rule otherwise, it is difficult to see the point of including a collateral-challenge waiver in a plea agreement. As to defendants whose counsel failed to appreciate current law, they could obtain relief based on ineffective assistance. As to defendants whose counsel failed to be omniscient in anticipating future developments in the law, they could obtain relief on the ground that the waiver does not cover future changes in law, whether due to later interpretations of a criminal statute, later constitutional rulings, or later congressional changes to criminal laws or sentencing. In the short term, that might seem helpful to criminal defendants. But in the long term, it would eliminate a bargaining tool to convince the government to drop pending charges against a defendant.

That leaves the second option—and another way of characterizing the defendants' claim. Instead of sidestepping the plea agreement, they wish to enforce it by its terms. Recall that the plea agreement permits a collateral attack if the sentence exceeds "the statutory maximum." Because *Davis* limited the crimes that satisfy the elements of § 924(c), the argument goes, Portis and Thompson pleaded guilty to something for which no one could be convicted today and thus their sentences exceeded the statutory maximum.

*Bousley v. United States*, 523 U.S. 614 (1998), offers potential support for this theory. As here, the defendant pleaded guilty to a § 924(c) offense. As here, a later Supreme Court decision changed the interpretation of an element of the crime. And as here, the defendant brought a postconviction challenge. On that record, the Supreme Court held that the defendant could bring an actual-innocence claim (if he cleared several other hurdles) because guilty pleas are constitutionally valid only if they are knowing and voluntary, and a defendant who did not understand the "true nature of the charge against him" could not knowingly plead guilty to the crime. *Id.* at 618, 624 (quotation omitted).

But a salient difference remains between that case and this one. Today's case involves defendants who agreed to waive collateral challenges to their convictions or sentences. That was not true in *Bousley*, and it is dispositive here. The only fair reading of a "statutory maximum" carve-out that comes with a collateral-attack waiver is that it applies only to sentences that exceed the statutory maximum at the time of the sentence. Else, it would cover all manner of later developments—later cases construing the relevant statutes, later constitutional rulings, even later decisions by Congress to lower the statutory maximum. That would give the collateral-attack waiver little, if any, work to do. Plea agreements are contracts, *see United States v. Robinson*, 924 F.2d 612, 613 (6th Cir. 1991), and where possible we should construe each provision to have independent meaning and force, *see Kovach v. Zurich Am. Ins. Co.*, 587 F.3d 323, 336 (6th Cir. 2009); Restatement (Second) of Contracts § 203(a) (1981). Treating "statutory maximum" language in a plea agreement accompanied by a collateral-attack waiver as referring only to the law at the time of sentencing gives independent meaning to all of this language.

We have said as much before. It is not "reasonable to give the phrase 'statutory maximum'" in a plea agreement a new meaning after a new decision, we explained, before holding that the phrase "does not serve to distinguish this case from . . . *Bradley*"—and thus does not permit defendants to challenge guilty pleas based on later changes to the law. *United States v. Luebbert*, 411 F.3d 602, 603–04 (6th Cir. 2005); *see also United States v. Diaz*, 989 F.3d 390, 395 (5th Cir. 2021) (noting that courts construe the "language in the appellate waiver . . . in accord with the intent of the parties at the time the plea agreement was executed" (quotation omitted)).

Nor does *Bousley* mean that the collateral-attack waiver may not be enforced because it was unknowing. The Court held only that the guilty plea in that case was unknowing, not that a collateral-attack waiver would be unknowing or unenforceable. It is one thing to knowingly plead guilty to the elements of a crime; it is quite another to knowingly waive collateral challenges to a conviction. *See United States v. Morrison*, 852 F.3d 488, 491 (6th Cir. 2017) (holding that while changes in law permit some challenges to pleas *without* express waivers, a new constitutional holding does not permit a challenge when the defendant "intentionally relinquish[ed]" his right to appeal down the road and "[i]n doing so, . . . assumed the risk that he would be denied the benefit of future legal developments"). The "Supreme Court has not declared [collateral attacks] 'non-waivable' by express agreement." *Oliver v. United States*, 951 F.3d 841, 846 (7th Cir. 2020). Such waivers would "lose all effect" if they were thrown out for every challenge to the validity of the underlying conviction or sentence. *United States v. Worthen*, 842 F.3d 552, 555 (7th Cir. 2016); *see also United States v. Goodall*, 21 F.4th 555, 562–64 (9th Cir. 2021). Instead, the enforceability of a collateral-attack waiver turns on whether the prisoner's agreement *to the waiver* was knowing and voluntary, not whether the underlying conviction itself no longer appears valid after a change in law. *See United States v. Toth*, 668 F.3d 374, 379 (6th Cir. 2012) (noting that even if a defendant had claimed his guilty plea was constitutionally defective, "it would not change the conclusion" when the *waiver* was made knowingly and voluntarily).

Put another way, *Bousley* permits a defendant to collaterally attack a conviction that grows out of a guilty plea under some, but not all, circumstances. Because Bousley did not raise

his challenge at the appropriate time, he ran the risk that his § 2255 claim would be procedurally defaulted. He escaped that fate by claiming that he was "actually innocent" of the crime. But this judge-made exception to procedural default works comfortably with another judge-made qualification—that a future defendant may do what Bousley did not, namely agree to waive collateral attacks on his conviction no matter what future developments in the law bring.

In contrast to *Bousley*, Portis and Thompson knowingly and voluntarily agreed to waive their right to bring a postconviction challenge. *See* R.210 at 7 (noting that this § 2255 action involves a challenge to the "conviction," not the "plea," which was knowing and voluntary); R.209 at 6–7 (same). It was well understood then, as it is amply understood now, that judicial interpretations of the Constitution and laws could change, and on that ground alone a collateral attack waiver would not be unknowing.

Portis and Thompson do not allege deficiencies in the plea process or that their underlying agreements were invalid. *See* R.210 at 7 (claiming that they are challenging their convictions "not [the] validity of [the] plea"); R.209 at 6–7 (same). They just claim that, after the change in law brought about by *Davis*, their convictions "are unconstitutional and require reversal." Appellants' Br. at 25. That does not suffice. "If the agreement is voluntary, and taken in compliance with [Federal Rule of Criminal Procedure] 11, then the waiver of appeal must be honored. If the agreement is involuntary or otherwise unenforceable, then the defendant is entitled to appeal." *United States v. Wenger*, 58 F.3d 280, 282 (7th Cir. 1995).

Portis and Thompson also raise other objections to enforcing their plea waivers. They claim that, because the district court addressed their motion on the merits, we may not invoke the plea waiver. Not true. This court may affirm "on any grounds supported by the record." *Wallace v. Oakwood Healthcare, Inc.*, 954 F.3d 879, 886 (6th Cir. 2020) (quotation omitted). The government raised the appeal waiver at every step of these proceedings. The plea agreement and record support the argument. And while there is no rigid order of battle in cases like this one, it makes considerable sense to address the enforceability of a clearly worded collateral-challenge waiver before turning to the merits. What is the point of having such provisions in a plea agreement if they are not enforced at the outset?

Portis and Thompson add that we may not consider the waiver because the order granting the certificate of appealability did not mention it.  Not true either.  Although 28 U.S.C. § 2253(c)(3) states that the certificate of appealability must "indicate which specific issue or issues" the court is to consider, "the [certificate of appealability] requirement is asymmetric—it applies only [to] petitioners."  16AA Charles Alan Wright, Arthur R. Miller, & Catherine T. Struve, *Federal Practice and Procedure* § 3968.1 (5th ed. 2021); *see* Fed. R. App. P. 22(b)(1); 28 U.S.C. § 2253(c)(2).

*Vowell v. United States*, 938 F.3d 260 (6th Cir. 2019), does not alter this conclusion.  One feature of *Vowell* is unexceptional.  It says that a sentence may be challenged on appeal if it exceeds the statutory maximum.  *See id.* at 265.  Most plea waivers have an express exception of this sort, as indeed this one does.  But, as shown, such provisions generally measure the reach of the exception by the law in place at the time of sentencing, not based on future changes to the law.  *See United States v. Caruthers*, 458 F.3d 459, 471 (6th Cir. 2006) (collecting cases that all have this feature).  That is how the reference to a "statutory maximum" in this plea agreement works, and in that sense *Vowell* does not purport to break new ground.

In addition to making this point, however, *Vowell* could be read to create an exception to the rule that collateral-attack waivers remain enforceable even after subsequent changes in law.  It suggested that, when the challenger shows that the change in law "would otherwise render a defendant or petitioner's sentence statutorily excessive," the § 2255 waiver does not apply.  *Vowell*, 938 F.3d at 268.  In one sense, this language was not necessary to the outcome, as Vowell's challenge on the merits came up short anyway.  *Id.* at 271.  Accurate or not, however, the *Vowell* dicta does not apply here for at least two reasons.

One is that *Vowell* did not involve an express qualification to its collateral-attack waiver for sentences that exceed "the statutory maximum."  It thus had no occasion to determine whether, in the context of a given plea agreement, such language refers to the law in place at the time of sentencing or covers changes to the law in the future.  As shown, this plea agreement's reference to "the statutory maximum" refers to the maximum sentence at the time of sentencing, not to maximum sentences throughout a defendant's prison term based on future changes to the law.  Put differently, *Vowell* does not purport to explain what to do with a plea provision that

permits collateral attacks only for a "sentence that exceeds the statutory maximum at the time of sentencing." That in essence is how this plea agreement works, and *Vowell* does not speak to its meaning or enforceability.

The other reason that *Vowell* does not apply is that it involved a dispute about changes in law that affect the statutory maximum under §§ 922(g) and 924(e), not changes in law that affect the elements of a crime under § 924(c). That explains why the decision does not mention *Bousley*, a case about changes in law that potentially make someone actually innocent of a crime. The decision thus had no reason to offer any guidance about what to do with today's case, in which a defendant waived his right to bring a § 2255 claim based on changes in law that affected the elements of a crime.

The dissent, but not Portis and Thompson, argues that a "miscarriage-of-justice" exception permits us to sidestep the defendants' waivers. Dissent at 12–13. But as the dissent acknowledges, our circuit has not adopted this exception in a published opinion. *Id.* at 13 n.2. When our unpublished decisions have addressed this theory, it has been in dicta and even then only as a possible, not a given, exception. *See, e.g.*, *United States v. Matthews*, 534 F. App'x 418, 424–25 (6th Cir. 2013) (collecting cases that all have this feature). Because the defendants offer no argument for such an exception, because our court has yet to recognize this exception, and because any such exception likely would not apply given the multitude of crimes for which the defendants were indicted, there is no basis for applying it here.

We dismiss both appeals.

———————————

**DISSENT**

———————————

WHITE, Circuit Judge, dissenting.  The majority concludes that Portis and Thompson cannot challenge their § 924(c) convictions because one can waive any right in a plea agreement—including the right to not be imprisoned for a constitutionally non-cognizable crime—so long as the waiver is knowing and voluntary.  The majority's conclusion is not only in tension with our established precedent, but also would have the court uphold any conviction, including those subsequently determined to be unconstitutional, if a defendant has knowingly and voluntarily waived the right to attack it in a plea agreement.  I respectfully dissent.

I.

In *United States v. Caruthers*, Caruthers contended that the district court had erred when sentencing him because his burglary convictions were not violent felonies within the meaning of the Armed Career Criminal Act.  458 F.3d 459, 464 (6th Cir. 2006).  But Caruthers had knowingly and voluntarily waived the right to make such a challenge in his plea agreement.  *Id.* at 470 n.3, 470–71.  In determining whether Caruthers nevertheless retained the right to challenge his sentence on appeal, the court considered a doctrine uniformly applied in our sister circuits—"that an appellate waiver may not bar an appeal asserting that the sentence exceeds the statutory maximum."  *Id.* at 471 (collecting cases).  The court outlined different rationales for the doctrine: a court is without jurisdiction to impose an illegal sentence; due process demands more in the way of "civilized procedure . . . regardless of what the defendant . . . is willing to accept"; and, both the supervisory power of the courts of appeals and the unenforceability of unconscionable contracts require that plea-agreement terms that would lead to miscarriages of justice not be enforced.  *Id.* at 471–72.  Without deciding which rationale is most apt, the court adopted the doctrine, concluding that "an appellate waiver does not preclude an appeal asserting that the statutory-maximum sentence has been exceeded."  *Id.* at 472.

In *Vowell v. United States*, the court reaffirmed and expanded *Caruthers*'s rule, holding that "a defendant or petitioner may challenge his sentence as being statutorily excessive . . . even

if the waiver was otherwise knowing and voluntary," not just when a district court may have erred at sentencing, but also "based on a subsequent change in the law."**[1]** 938 F.3d 260, 268 (6th Cir. 2019). The court also explained that other decisions (some relied on by the majority here), namely, *Brady v. United States*, 397 U.S. 742 (1970); *United States v. Bradley*, 400 F.3d 459 (6th Cir. 2005); and *United States v. Morrison*, 852 F.3d 488 (6th Cir. 2017), do not compel a contrary conclusion because they simply stand for the proposition that a subsequent change in the law does not render an otherwise valid waiver unknowing or involuntary. *Id.* at 267–68. "[These cases] logically extend only to situations in which the defendant or petitioner utilizes those later decisions to argue that his waiver was involuntary or unknowing." *Id.* at 268. None of the cases "concluded that a defendant would be prohibited from pointing to a change in the law that renders his sentence in excess of the length authorized by statute, and, therefore, illegal." *Id.* at 267. Thus, we did not enforce Vowell's plea-agreement waiver and reached the question whether a subsequent change in the law—*Johnson v. United States*, 576 U.S. 591 (2015)—had rendered Vowell's sentence statutorily excessive, i.e., not authorized by law.

Of course, a miscarriage of justice may involve reasons other than a sentence being in excess of the length authorized by statute. A subsequent change in the law that makes it unconstitutional to convict someone for certain conduct would make a sentence based on that conduct not authorized by law. *See United States v. Ledbetter*, 929 F.3d 338, 360–61, 366 (6th Cir. 2019). After all, "a vague law is no law at all." *United States v. Davis*, 139 S. Ct. 2319, 2323 (2019).

If Portis's and Thompson's § 924(c) convictions were, in fact, predicated on conspiracy to commit Hobbs Act robbery, their conduct would not constitute constitutionally cognizable offenses and, thus, imprisoning them based on such conduct would not be authorized by law. Declining to consider the merits of their claims could therefore result in a grave miscarriage of

---

**[1]**The rule equally applies on direct appeal and when a conviction is collaterally attacked. *Vowell v. United States* 938 F.3d 260, 267–68 (6th Cir. 2019) (citing *United States v. Andis*, 333 F.3d 886, 887 n.2 (8th Cir. 2003); *United States v. Cockerham*, 237 F.3d 1179, 1182–83 (10th Cir. 2001) ("[T]he same exceptions to the waiver of the right to appeal, if they arise, would be available to the waiver of the right to collateral attack.")).

justice.**2**　*See, e.g.*, *United States v. Sweeney*, 833 F. App'x 395, 396–97 (4th Cir. 2021).　In refusing to address the merits based on the collateral-attack waiver, the majority ignores the clear import of *Vowell*'s holding—a defendant or petitioner is not prohibited from seeking relief based on a change in law that renders his conviction and resultant sentence constitutionally invalid, even if he has knowingly and voluntarily waived the right to bring a collateral attack.**3**　938 F.3d at 267–68.

## II.

The majority initially attempts to sidestep *Vowell*'s holding by suggesting that it is dicta; it is not.　*See id.* at 268, 271.　Consideration of the waiver was necessary to reach the merits.　The majority then claims that *Vowell* is inapplicable because Portis's and Thompson's plea agreements contained provisions allowing them to challenge excessive sentences, which *Vowell*'s did not.　But this difference is irrelevant.　The *Vowell* panel did not purport to be interpreting the terms of the plea agreement's waiver provision and it is not clear why the presence of the exception to the waiver should cause Portis's and Thompson's plea agreements to be read more strictly than they would be in the absence of any exception at all.　Further, a sentence imposed for acts that the Supreme Court has said are not constitutionally cognizable as criminal is excessive, in a way, but it is also accurate to say that if a conviction is unconstitutional, any corresponding sentence is invalid.　*See Ledbetter*, 929 F.3d at 360–61, 366.　Additionally, as mentioned, the clear import of *Vowell*'s holding is that a defendant or petitioner may challenge a purportedly invalid sentence based on a subsequent change in the law, notwithstanding a knowing and voluntary waiver.　Thus, when deciding whether to enforce

---

**2**I note that our circuit has not expressly adopted the miscarriage-of-justice rationale employed by the majority of our sister circuits, but we have recognized it in several unpublished decisions.　*United States v. Mathews*, 534 F. App'x 418, 424–25, 427 (6th Cir. 2013) (collecting cases).　And, of course, in *Caruthers*.　458 F.3d at 472 (stating that the rationale implicitly invokes both the unconscionability doctrine of contract law and the supervisory power of the courts of appeals).

**3**The majority finds it unnecessary to engage with whether a waiver exception permits us to reach the merits, in part, because Portis and Thompson do not argue that enforcing the waivers would result in a miscarriage of justice.　However, the district court did not enforce the collateral-attack waivers, and Portis and Thompson therefore had no need to address the issue on appeal.　Further, the government—the party arguing that the collateral-attack waivers should be enforced on appeal—repeatedly contends that "enforcement of th[e] waiver[s] will not result in a manifest injustice."　Appellee Br. at 30.　Thus, the question whether an exception applies in the instant cases is properly before us.

Portis's and Thompson's collateral-attack waivers, we must determine only whether their challenges implicate convictions that the Constitution forbids and sentences not authorized by law.  Because they may have been convicted under § 924(c) for conspiracy to commit Hobbs Act robbery, this is obviously so.  *Davis*, 139 S. Ct. at 2336; *Ledbetter*, 929 F.3d at 360–61; *In re Franklin*, 950 F.3d 909, 911 (6th Cir. 2020) (per curiam).

The majority also distinguishes *Vowell* by pointing to the fact that it considered a conviction under § 924(e) in conjunction with § 922(g), not under § 924(c), i.e., that it involved changes to the statutory penalties, not changes affecting the elements of the crime.  However, the *Vowell* court did not limit the reach of its holding to convictions under § 924(e) in conjunction with § 922(g).  Its reasoning encompassed the broader proposition that a knowing and voluntary waiver of the right to bring a collateral attack does not preclude a challenge based on a change of law that has rendered the punishment illegal.  And, the court cited cases involving convictions and sentences under different statutes when making this point.  *Vowell*, 938 F.3d at 265–68.  The reasoning behind *Vowell*'s holding is obvious: we should not be enforcing plea-agreement waivers when doing so could result in a miscarriage of justice—keeping individuals imprisoned on void convictions.[4]

Finally, the cases relied on by the majority are inapposite.  In *Brady*, the Supreme Court stated that waivers of constitutional rights must be voluntary and knowing, and considered whether Brady's guilty plea—offered to limit his punishment to life imprisonment and avoid the death penalty—was entered knowingly and voluntarily.  397 U.S. at 748, 758.  However, as discussed, it is irrelevant whether Portis's and Thompson's pleas knowingly and voluntarily waived the right to bring a collateral attack because *Vowell* provides a separate basis for invalidating their waivers—an invalid sentence based on a change in law that makes the underlying conviction constitutionally infirm—even when the right to mount a collateral attack has been knowingly and voluntarily waived.

---

[4]Although an out-of-circuit court enforced similar collateral-attack waivers in the end, it did so only after considering whether enforcing them would bring about a miscarriage of justice.  *Oliver v. United States*, 951 F.3d 841, 847 (7th Cir. 2020) ([T]he government could easily have premised the § 924(c) counts on the Hobbs Act robbery. . . . It is not a miscarriage of justice to refuse to put Oliver and Ross in a better position than they would have been in if all relevant actors had foreseen *Davis*.").  As mentioned, the majority opinion does not make it this far into the analysis, ruling such an inquiry unnecessary.

*Bradley* concerned a request to be resentenced after the Guidelines had been declared to be advisory, not mandatory, which this court denied because this change in law did not suddenly make Bradley's plea involuntary or unknowing. 400 F.3d at 463–64. But, again, *Bradley* is irrelevant—Portis and Thompson need not demonstrate their waivers have been rendered involuntary or unknowing based on a subsequent change in the law. For the court to decline to enforce the waivers, Portis and Thompson have to demonstrate only the separate basis identified in *Vowell*—that a change in the law may have rendered their convictions void and their sentences invalid—which Portis and Thompson have done. And, although *Bousley v. United States* involved a § 924 conviction and a challenge to its validity based upon a new interpretation of an element of the crime, once again, the dispute turned on whether Bousley's guilty plea was unknowing. 523 U.S. 614, 618–19, 622 (1998).

In short, the cases cited by the majority are inapposite—Portis and Thompson need not rely on *Brady*, *Bradley*, or *Bousley*, nor should they. *Vowell* acknowledged as much: to the extent these cases limit a "petitioner's ability to use subsequent changes in the law to invalidate his appellate waiver, they logically extend only to situations in which the . . . petitioner utilizes those later decisions to argue that his waiver was involuntary or unknowing." 938 F.3d at 268. They say nothing regarding whether we should enforce a knowing and voluntary collateral-attack waiver when a subsequent change in the law has potentially rendered the conviction unconstitutional. *Vowell* does, however, which is why we must decline to enforce Portis's and Thompson's collateral-attack waivers.[5]

III.

Finally, I note that addressing the claims on the merits and even granting relief regarding the § 924(c) convictions does not mean that Portis and Thompson will receive lighter sentences. After such invalidations, "courts of appeals routinely vacate the defendant's entire sentence on all counts so that the district court may increase the sentences for any remaining counts."

---

[5]To the extent the majority contends that recognizing an exception to the waiver under these circumstances will undermine future plea negotiations and be unfair to the government, these concerns are better addressed to the merits of the motion to vacate and the individual factual circumstances surrounding the plea agreement and waiver and do not support blanket enforcement of all knowing and voluntary waivers without regard to the circumstances.

*Davis*, 139 S. Ct. at 2336 (internal quotation marks omitted). Count 1 would not be affected by any invalidation. The presentence report calculated the Guidelines range for this offense as 188–235 months of imprisonment for Portis and 121–151 months for Thompson, and the district court varied downward to sentence Portis to 102 months and Thompson to ninety-six months. Portis's consecutive sentence of 186 months is within his undisturbed Guidelines range and Thompson's undisturbed range is thirty-nine months shy of his consecutive sentence of 180 months. On resentencing, the court may find reason to impose the same sentences on the remaining count.

\* \* \*

For the foregoing reasons, I respectfully dissent.