

Villanova University School of Law
Villanova University School of Law Digital Repository

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-5-2005

# USA v. Lockett

Precedential or Non-Precedential: Precedential

Docket No. 04-2244

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"USA v. Lockett" (2005). *2005 Decisions*. Paper 1104.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1104

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 04-2244

———

UNITED STATES OF AMERICA

v.

ROGERS LOCKETT, III
a/k/a
MANNY STRONG

Rogers Lockett,
Appellant

———

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 03-cr-00421)
District Judge: Honorable Cynthia M. Rufe

———

Argued March 9, 2005

Before: NYGAARD, McKEE, and RENDELL, Circuit Judges

(Filed: May 5, 2005)


Robert Epstein, Esq. (Argued)
Defender Association of Philadelphia
Federal Court Division
601 Walnut Street
The Curtis Center, Suite 540 West
Philadelphia, PA 19106
          Counsel for Appellant

Thomas R. Perricone, Esq. (Argued)
Office of the United States Attorney
615 Chestnut Street
Philadelphia, PA 19106
          Counsel for Appellee


_____


OPINION OF THE COURT
_____


NYGAARD, Circuit Judge.

Rogers Lockett argues that the District Court erred by denying his motion to suppress because the police exceeded the scope of his consent to search his suitcase and unlawfully seized him, rendering the search of his backpack involuntary.

Additionally, he submits that he is no longer bound by the dictates of his plea agreement as a result of the Supreme Court's decision in *United States v. Booker*, 543 U.S. __, 125 S. Ct. 738 (2005). We will affirm.

## I.

Lockett was sitting on a bench in the Amtrak 30th Street Train Station in Philadelphia. After watching Lockett for approximately fifteen minutes, Special Agent Carl Giardinelli[1] and Corporal William Burdette[2] approached him. Burdette showed Lockett his badge, identified himself, and asked if Lockett would answer a few questions. After Lockett answered

---

[1] Special Agent Giardinelli is an agent with the Drug Enforcement Agency.

[2] Officer Burdette is a Corporal with the Pennsylvania State Police assigned to the Bureau of Emergency and Special Operations and then reassigned to the Drug Enforcement Agency.

"yes," Burdette sat down on the bench approximately two feet to Lockett's right and Giardinelli remained standing a few feet to the right of Burdette. Burdette asked Lockett some questions about his travel and Lockett explained that he was from Philadelphia but was traveling to Boston, where he attends Newbury College. Burdette examined Lockett's identification and train ticket and then returned them to Lockett.

Burdette explained to Lockett that he and Agent Giardinelli were looking for contraband including narcotics, large sums of money, guns, and other weapons. He asked Lockett if he had any of these items in his possession; Lockett said that he did not. Then Burdette asked Lockett if the rolling suitcase on the seat next to Lockett belonged to him and Lockett admitted that it did. Burdette asked if he could look in the suitcase and Lockett said "yes." Lockett then placed the suitcase on the floor and started to open it, at which point

4

Burdette said, "that's okay, I can get that." Lockett responded, "no, I'll get it," but Burdette repeated, "no, that's okay, I can get it." Burdette then opened the bag.

After opening the suitcase, Giardinelli and Burdette saw three large plastic bags that contained numerous small clear plastic bags, which the Officers recognized as the type of bags commonly used to package illegal drugs. On one of the larger bags was a picture of a marijuana leaf. Burdette pushed the rolling suitcase over to Giardinelli, who continued searching through it.

While Giardinelli was searching the suitcase, Burdette asked Lockett if the other bag, a backpack, belonged to him and Lockett said "yes." Burdette asked if he could look in the backpack and Lockett said "yes" and handed the backpack to Burdette.

As Giardinelli was searching the rolling suitcase, his

finger hit a metal object and he realized it was a gun.[3] He yelled "gun" in a loud voice so as to get the attention of Burdette and the other law enforcement officers in the vicinity. Burdette and Officer Sean Martin, an Amtrak police officer, handcuffed Lockett and walked him from the public area of the train station to the Amtrak police station, which was a short distance away within the same building. Lockett was handcuffed to a bench in the Amtrak police station while Burdette physically searched through the bags with Giardinelli observing nearby.[4] After the

---

[3]The gun discovered by Giardinelli was an Intertec 9mm semi-automatic uzi-type weapon with an obliterated serial number.

[4]During the search at the police station, Burdette and Giardinelli found a Bryco Jennings 9mm semi-automatic pistol with an obliterated serial number loaded with twelve live rounds, as well as a magazine for the Intratec containing thirty rounds of ammunition. They also found approximately one pound of marijuana in the rolling suitcase. In addition, they found three notebooks and pictures in the backpack; two of the pictures were of Lockett and another individual holding

6

search, Officer James Corbett, a member of the Philadelphia Police Department, read Lockett his *Miranda* rights and then asked him who owned the guns. Lockett answered, "the guns are mine." Corbett then asked Lockett from whom he obtained the firearms, at which point Lockett said that he wanted to talk to a lawyer. At this point all questioning of Lockett stopped.

## II.

Lockett was charged with possession of marijuana with the intent to distribute, possession of firearms in connection with a drug trafficking offense, and possession of firearms with obliterated serial numbers. Lockett filed a motion to suppress the physical evidence and the statements he made to the law enforcement officers. After a hearing, the District Court denied the Motion, with the following detailed findings of fact and

handguns to each other's heads.

7

conclusions of law: (1) the encounter between Burdette, Giardinelli, and Lockett was not coercive and did not constitute a stop or seizure under the Fourth Amendment; (2) a reasonable person in Lockett's position would have felt free to refuse to talk to Giardinelli and Burdette; (3) Lockett voluntarily gave his consent to search his rolling suitcase and backpack; (4) Lockett never revoked his consent to the searches of his rolling suitcase and backpack; (5) Lockett was not in custody until his arrest after Giardinelli discovered the gun in his rolling suitcase; and (6) Lockett voluntarily, knowingly, and intelligently waived his *Miranda* rights prior to saying "the guns are mine."

Pursuant to a written guilty plea agreement, Lockett pleaded guilty to all charges, reserving his right to appeal the denial of his motion to suppress. The plea agreement expressly limited the defendant's right to appeal, excepting only an appeal based on a claim that the defendant's sentence exceeded the

8

statutory maximum, that the sentencing judge erroneously departed upwards from the guidelines range, or that the district court erroneously decided the suppression issues.

The District Court imposed a sentence of six months imprisonment for possession of marijuana with intent to distribute and possession of firearms with obliterated serial numbers pursuant to the federal sentencing guidelines. The District Court also imposed a sentence of sixty months imprisonment to run consecutively for possession of firearms in furtherance of a drug trafficking crime, which is the statutory mandatory minimum. The total sentence was for 66 months imprisonment, five years of supervised release, a $2,000 fine, and a special assessment of $300. Lockett now appeals his conviction and sentence.

## III.

This is an appeal from a final judgment of the District

Court.  We have appellate jurisdiction pursuant to 28 U.S.C. § 1291.

We review a District Court's denial of a motion to suppress for clear error as to the underlying factual findings and exercise plenary review over the District Court's application of the law to those facts. *United States v. Perez*, 280 F.3d 318, 336 (3d Cir. 2002).  A District Court's determination of consent to search is a finding of fact.  *Schneckcloth v. Bustamonte*, 412 U.S. 218, 227 (1973).

## IV.

*A.    Seizure*

Lockett asserts that he was unlawfully seized when he submitted to authority by relinquishing control of his suitcase. We do not agree.

It is well established that no seizure has occurred when an officer approaches an individual in a public place, identifies

10

himself as a law enforcement agent, asks questions, asks to search a person's bags, or explains that he is conducting a narcotics investigation. *See Florida v. Royer*, 460 U.S. 491, 497 (1983); *United States v. Thame*, 846 F.2d 200, 202–03 (3d Cir. 1988). Even when law enforcement officers have no basis for suspecting a particular individual, they may pose questions, ask for identification, and request consent to search luggage, provided they do not induce cooperation by coercive means. *See Florida v. Bostick*, 501 U.S. 429, 434–35 (1991). If a reasonable person would feel free to terminate the encounter, then he or she has not been seized. *Id.*

Under similar circumstances, we have held that questioning of a traveler by police officers, followed by a request to search the traveler's bags did not amount to a "seizure" of that traveler under the Fourth Amendment. *See Thame*, 846 F.2d at 204. We reasoned that the officers had not

11

restrained Thame, blocked his path, or otherwise controlled his movement by retaining his papers. *Id.* Nor had the police, in any way, suggested to Thame that he was positively identified as a suspect. *Id.* Thus, despite the fact that other law enforcement officers may have been in Thame's view, we concluded that no seizure had occurred. *Id.*

As in *Thame*, the encounter here took place in an open public area. The officers did not control or block Lockett's movement. They did not retain Lockett's papers or identification. And they did not tell Lockett that he was a suspect. We hold that the officers did not induce Lockett's cooperation by coercion. In light of all the circumstances, a reasonable person would have felt free to terminate the encounter, and therefore Lockett was not "seized."

B. *Consent*

Under the Fourth and Fourteenth Amendments, a search

conducted without a warrant issued upon probable cause is "per se unreasonable . . . subject only to a few specifically established and well-delineated exceptions." *Schneckloth*, 412 U.S. at 219. "It is equally well settled that one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent." *Id.* Consent must be voluntary, may be express or implied, and need not be knowing or intelligent. *Id.* at 235. It may be given unintentionally and without knowledge of the right to refuse consent, and the police are not required to warn an individual of the right to refuse consent. *Id.*

Lockett does not dispute the District Court's finding of consent, but instead claims that he gave "limited consent" only to a "visual inspection." Lockett asserts that, even though counsel below may not have used the precise term "limited consent," the legal issue remains the same: would the officers'

13

conduct have communicated to a reasonable person that Lockett was not free to decline the officers' request.

The government contends Lockett waived the limited consent issue by failing to include it in his suppression motion.[5] Federal Rule of Criminal Procedure 12(b)(3) requires a defendant to file a suppression motion prior to trial, and Rule 12(f) provides that failure to do so constitutes a waiver. We agree that Lockett waived the limited consent issue.

It is well settled that arguments asserted for the first time on appeal are deemed to be waived and consequently are not

---

[5]The Government's Brief notes that: "Lockett filed a Motion to Suppress Physical Evidence and Statement before the suppression hearing and filed a Supplemental Memorandum of Law in Support of Defendant's Motion to Suppress Physical Evidence and Statement after the hearing. In neither of these written submissions, nor in the oral argument immediately following the hearing, did Lockett claim that he gave consent only to a visual inspection of his suitcase or that the police search of his suitcase exceeded the scope of his limited consent." (Appellee's Br. at 27).

14

susceptible to review in this Court absent exceptional circumstances. *See Brown v. Phillip Morris, Inc.*, 250 F.3d 789, 799 (3d Cir. 2001); *United States v. Martinez-Hidalgo*, 993 F.2d 1052, 1057–58 (3d Cir. 1993) (finding claim of unreasonable seizure waived when defendant conceded he never filed a motion to suppress in trial court); *see also* FED. R. CRIM. P. 12(e) ("[a] party waives any Rule 12(b)(3) defense, objection, or request not raised" prior to trial). As noted by the Advisory Committee to the Rules, "[i]t seems apparent that the same principle should apply whatever the claimed basis for the application of the exclusionary rule of evidence may be." FED. R. CRIM. P. 12 advisory committee's note. Therefore, in the context of a motion to suppress, a defendant must have advanced substantially the same theories of suppression in the district court as he or she seeks to rely upon in this Court. See *United States v. Neumann*, 887 F.2d 880, 886 (8th Cir. 1989) (finding the defendant's claim

15

on appeal waived because argument that the warrant was overbroad differed from his argument below — that the warrant was deficient in probable cause). Lockett was afforded the opportunity to raise the issue of limited consent before the District Court; however, there he argued that the consent to search was not voluntary. Because "[a] litigant cannot jump from theory to theory like a bee buzzing from flower to flower," *United States v. Torres*, 162 F.3d 6, 11 (1st Cir. 1998) (finding issue raised on appeal — whether a parent has authority to consent to search a child's room — waived since different from the issue asserted in the district court — whether consent was voluntary), Lockett's claim that Officer Burdette exceeded the scope of Lockett's limited consent is waived.

## V.

Lockett also maintains that his sentence is inconsistent with the Supreme Court's recent decision in *United States v.*

16

*Booker*, 543 U.S. __, 125 S. Ct. 738 (2005), and he urges us to remand his case for resentencing in the District Court. As part of his plea agreement, however, Lockett "voluntarily and expressly waive[d] all rights to appeal or collaterally attack [his] convictions, sentence, or any other matter relating to this prosecution." (Appellant's App. at 205.12a). The only exceptions listed in the plea agreement permitted an appeal based on a claim that defendant's sentence exceeded the statutory maximum, that the sentencing judge erroneously departed upwards from the guidelines range, or that the district court erroneously decided the suppression issues.

Waivers of appeal, if entered knowingly and voluntarily, are valid, unless they work a miscarriage of justice. *United States v. Khattak*, 273 F.3d 557, 563 (3d Cir. 2001). The waiver of an appeal will not be invalidated merely because unanticipated events occur in the future. The prospective nature of waivers has

17

"never been thought to place [waivers] off limits or to render a defendant's act 'unknowing.'" *Id*. at 561 (citing *United States v. Teeter*, 257 F.3d 14, 21 (1st Cir. 2001)).

Just as subsequent changes in the law do not undercut the validity of an appellate waiver, they do not render the plea itself invalid. The Supreme Court has explained that where subsequent developments in the law expand a right that a defendant has waived in a plea agreement, that change does not make the plea involuntary or unknowing or otherwise undo its binding nature. *See United States v. Brady*, 397 U.S. 742, 757 (1970); *United States v. Bradley*, No. 03-6328, 2005 WL 549176, *4 (6th Cir. March 10, 2005). As the Supreme Court indicated, "absent misrepresentation or other impermissible conduct by state agents, . . . a voluntary plea of guilty intelligently made in the light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty

18

premise." *Brady,* 397 U.S. at 757 (holding that a defendant could not claim his plea was involuntary by relying on a Supreme Court decision that declared unconstitutional a provision relevant to his criminal sentence). In *Brady*, the Court explained that "a defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case or the likely penalties attached to alternative courses of action." *Id; see also United States v. Ruiz*, 536 U.S. 622, 630 (2002). To be more succinct, "a valid plea agreement, after all, requires knowledge of existing rights, not clairvoyance." *Bradley*, 2005 WL 549176, at *4.

Lockett asks us to invalidate his sentence because he did not know at the time he pleaded guilty that the Supreme Court would later hold that the Sentencing Guidelines are advisory. However, this change in the law cannot effect a change in his

plea. As the Sixth Circuit has recently explained:

> "[p]lea bargains always entail risks for the parties — risks relating to what evidence would or would not have been admitted at trial, risks relating to how the jury would have assessed the evidence and risks relating to future developments in the law. The salient point is that a plea agreement allocates risk between the two parties as they see fit. If courts disturb the parties' allocation of risk in an agreement, they threaten to damage the parties' ability to ascertain their legal rights when they sit down at the bargaining table and, more problematically for criminal defendants, they threaten to reduce the likelihood that prosecutors will bargain away counts with knowledge that the agreement will be immune from challenge on appeal."

*Id.* at *5; *see also Young v. United States*, 124 F.3d 794, 798 (7th Cir. 1997) ("If the law allowed the defendant to get off scot free in the event the argument later is shown to be a winner, then the defendant could not get the reduction in the first place. Every plea would become a conditional plea, with the (unstated) condition that the defendant obtains the benefit of favorable legal

20

developments, while the prosecutor is stuck with the original bargain no matter what happens later. That approach destroys the bargain, and the prospect of such an outcome will increase the original sentence."); *United States v. Moscahlaidis*, 868 F.2d 1357 (3d Cir. 1989). The possibility of a favorable change in the law occurring after a plea agreement is merely one of the risks that accompanies a guilty plea. *See United States v. Sahlin,* 399 F.3d 27 (1st Cir. 2005). The record reflects that Lockett knowingly and voluntarily bargained for his plea agreement. He cannot now ask to re-bargain the waiver of his right to appeal because of changes in the law. We hold that where a criminal defendant has voluntarily and knowingly entered into a plea agreement in which he or she waives the right to appeal, the defendant is not entitled to resentencing in light of *Booker*.

We join four other Courts of Appeals in reaching this conclusion. *See United States v. Bradley*, No. 03-6328, 2005 WL

21

549176 (6th Cir. March 10, 2005); *United States v. Parsons*, 396 F.3d 1015, 1017–18 (8th Cir. 2005) ("[T]here would be no merit to an argument that [the defendant] is entitled to resentencing under advisory Guidelines in light of *Booker*. He expressly agreed as part of his plea agreement that he would be sentenced under the Guidelines."); *United States v. Rubbo*, 396 F.3d 1330, 1334 (11th Cir. 2005) ("the right to appeal a sentence based on *Apprendi/Booker* grounds can be waived in a plea agreement"); *United States v. Sahlin*, 399 F.3d 27, 31 (1st Cir. 2005) ("[T]he possibility of a favorable change in the law occurring after a plea agreement is one of the normal risks that accompanies a guilty plea.").

## VI.

For the foregoing reasons, we will affirm the District Court's decision that the search of Lockett's luggage was not coercive and did not constitute a stop or seizure in violation of

22

his rights under the Fourth Amendment.  We will dismiss the remainder of his appeal as inconsistent with the appellate waiver in his plea agreement.