

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-7-2005

# USA v. Myers

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-2348

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"USA v. Myers" (2005). *2005 Decisions.* Paper 443.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/443

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 04-2348

———————

UNITED STATES OF AMERICA

v.

KENNETH KASAN MYERS,
                                    Appellant

———————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
D.C. Crim. No. 03-cr-00480
District Judge:  The Honorable William H. Yohn, Jr.

———————

Submitted Under Third Circuit LAR 34.1(a)
September 13, 2005

———————

Before: SLOVITER, BARRY, and SMITH, Circuit Judges

———————

(Opinion Filed: October 7, 2005)

———————

OPINION

———————

BARRY, Circuit Judge

      On July 31, 2003, a grand jury returned an indictment against Kenneth Kasan

Myers, charging him with possession of a firearm by a convicted felon and possession of

a firearm with a removed, obliterated, or altered serial number, in violation of 18 U.S.C. § 922(g)(1) and § 922(k). On February 5, 2004, Myers pled guilty to both counts, conditioned on his right to appeal the District Court's earlier denial of his suppression motion. On May 11, 2004, the District Court sentenced Myers to 51 months imprisonment. This timely appeal followed.[1]

On appeal, Myers argues that his Fourth Amendment rights were violated when police officers grabbed his wrists and searched his person without reasonable suspicion and, thus, that his motion to suppress the evidence of that search should have been granted. Myers argues as well that his sentence violated *United States v. Booker*, 125 S.Ct. 738 (2005). We will affirm.

## I. Background

On April 9, 2003, at approximately 11:00 p.m., two anonymous 911 calls were received by the Philadelphia Police Department dispatcher. The callers both claimed that they had heard gunshots. The first caller stated that there were six or seven shots, possibly at the corner of Marston and Tasker streets. The caller did not provide a description of the shooter or shooters. The second caller stated that there were five or six shots fired, and that the shooters were two black males, one wearing a red jogging suit and the second wearing all black. A Computer Aided Dispatch ("CAD") report indicated

---

[1] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.

that two black males had fled the scene, one wearing a jacket with "NBA" on it.

Officer Adrienne Suder responded to the scene of the shooting and spoke to a woman who claimed to have called 911. Suder found seven spent .380 caliber cartridge casings and three copper projectiles. Officers Shawn Rinier and Edward Nelson testified that they, too, responded to the scene, but did not participate in any investigation.

Officer Rinier also testified that, later that evening, he spoke to a man in his late teens named Stuart, whom both Rinier and Nelson knew from the area. According to Rinier, who did not file a report of the conversation, Stuart told him that a group of black males followed him and one of the males shot at him. Stuart described the shooter as being in his early twenties and wearing a blue and white jacket with blue sleeves and an NBA logo on the back. The District Court found that this testimony was not corroborated and that it was "incredible" that if Rinier had a description as distinctive as Stuart had supposedly given, he would not have filed a report.

The following night, Officers Rinier and Nelson, wearing plain clothes and driving in an unmarked car with Officer Raymond Tancredi, were patrolling in the area of the shooting, an area Tancredi described as "nasty" and where shootings occurred daily. 249-50a. They saw a black male wearing a blue and white jacket who appeared to fit the description of the person they were looking for in connection with the shooting. As they got closer, however, they realized that the back of the jacket did not have an NBA logo on

3

it, and therefore did not match the "flash."[2]

A few minutes later, the officers observed a black female and two black males. The officers noticed that a man subsequently identified as the defendant, Kenneth Kason Myers, was wearing a blue and white jacket with an NBA logo on the back. As Nelson put it, Myers was wearing "the jacket we were looking for." 182a. Rinier added that the jacket, which was unique, matched "the exact information" which he testified had been provided by Stuart. 100a. Tancredi testified that they were "keeping an eye out for that jacket . . . [which] was kind of an odd jacket for that area and that was the – the jacket was worn by the person, who was supposedly doing the shooting." 218-19a.

The officers stopped their vehicle next to where Myers was standing. Rinier asked Myers if he could talk to him. Myers looked at Rinier and made "a sudden movement, turning his body, reaching toward his waistband." 101-102a. Rinier could not see Myers' hands, but Tancredi believed he was attempting to "take something or move something." 222a. The officers exited the vehicle and displayed their badges, which hung on metal chains around their necks, and Rinier and Nelson identified themselves as police officers. Myers continued to fidget with his hands, moving them towards the right side of his waistband. Rinier then grabbed Myers' wrists, put Myers' hands on the hood of the

---

[2]A "flash" is a description generally provided over a police radio. Agent Poole, an ATF agent, testified that he had been told by Officers Rinier and Nelson that there was a radio flash of an attempted shooting, that the shooter was a "black male, early twenties, white jacket, blue sleeves, NBA logo" and that Stuart confirmed that information. 276a.

vehicle, and told him not to move them.  Rinier was concerned that Myers might have a weapon.  104a.  Myers refused to cooperate, moved his hands back to the area of his waist, and pressed his body against the vehicle in an attempt, Tancredi believed, to conceal a weapon.

Both Officers Rinier and Tancredi grabbed the back part of Myers' pants and pulled him away from the vehicle so that his waistband area could be frisked by Tancredi.  Tancredi, who had seen a bulge in the area of Myers' front right pocket, felt a hard object on Myers' right side and realized it was the butt of a gun.  Tancredi removed what was identified as a .380 caliber handgun.

The District Court carefully considered the testimony of the eight witnesses who appeared at the suppression hearing.  As noted above, the Court found the "entire testimony in connection with the report from Stuart to be lacking in credibility," 10a, and did not consider it.  The Court did, however, find all the remaining testimony with reference to what occurred on April 9th and 11th to be credible – the officers had a "flash" describing the shooter as a young black male wearing a unique blue and white NBA jacket, a description "confirmed by all the paperwork, the reports . . . and the CAD report and also the fact . . . that on April the 11th, Rinier, Nelson and Tancredi were all looking for somebody with an NBA jacket."  10a-11a, 15a.  Additionally, the Court found that the officers were in a high crime area, late at night, and were investigating a shooting that occurred just a few blocks away.

Rightly or wrongly, the District Court did not believe that, without more, the "flash" description from an unknown source of unknown reliability provided the requisite reasonable suspicion for a *Terry* stop. *See Terry v. Ohio*, 392 U.S. 1 (1968). The Court did, however, believe that it was permissible, in light of the facts set forth above, for the officers to approach Myers on the street and ask to talk to him. When they did so, the Court found, Myers turned away, moved his hands to his waistband and was fidgeting. He continued to move his hands towards his waist even after being told not to do so. At that point, the Court noted, the officers were "obviously" concerned for their safety. 17a. When Myers "continued to put his hands . . . in his waist – then, they were justified as a matter of law to grab his hands and place them on the hood of the car, since at that point they had reasonable suspicion to conduct a pat down search as a result of a *Terry* stop." 18a. The pat down disclosed the gun Myers had in his waistband, and provided probable cause for his arrest. The motion to suppress was denied.

## II. <u>Discussion</u>

We review the denial of a motion to suppress for clear error as to the underlying factual determinations, and exercise plenary review over the application of the law to those facts. *United States v. Lockett*, 406 F.3d 207, 211 (3d Cir. 2005).

To justify a *Terry* stop, an officer "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry*, 392 U.S. at 21. To determine whether official suspicion was

6

reasonable, we must measure what the officers knew before they conducted the patdown. *Florida v. J.L.*, 529 U.S. 266, 271 (2000). Moreover, "the evaluation of the totality of the circumstances must give rise to a particularized suspicion[.]" *United States v. Nelson*, 284 F.3d 472, 478 (3d Cir. 2002). The Supreme Court has also repeatedly recognized that even a series of apparently innocent acts, taken together, can amount to reasonable suspicion. *See, e.g., United States v. Arvizu*, 534 U.S. 266, 274-75 (2002).

We have set forth the facts in some detail. Those facts, and the application of the law to those facts, lead inexorably to the conclusion that the officers conducted a lawful investigative stop because they reasonably suspected on the basis of articulable facts both criminal activity and danger to themselves. Indeed, as defense counsel observed during the suppression hearing, "I certainly agree with the Government that, if my client reached for his waist . . . in a high-crime area where there had been lots of shootings, we would say that the officers, themselves, were remiss of [sic] their responsibilities for not having restrained the client and, at least, patted him down for their safety." 172a.

### III.  Booker

Myers also seeks a remand for resentencing in light of *United States v. Booker*, 125 S.Ct. 738 (2005). We reject this request. Myers waived his right to appeal his sentence in all respects relevant here. We will dismiss this aspect of his appeal as inconsistent with the appellate waiver in his plea agreement. *See Lockett*, 406 F.3d at 212-14.

## IV.  <u>Conclusion</u>

For the foregoing reasons, we will affirm the judgments of conviction and sentence.