

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-15-2008

# USA v. Richardson

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-2713

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"USA v. Richardson" (2008). *2008 Decisions.* Paper 1592.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1592

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 06-2713/06-2714
_____

UNITED STATES OF AMERICA

v.

AARON RICHARDSON,

Appellant.
_____

On Appeal from Two Judgments of Conviction entered by
the United States District Court
for the Western District of Pennsylvania
(Nos. 04-173 and 05-253)
District Judge: Hon. Alan N. Bloch

Submitted Under Third Circuit LAR 34.1(a)
January 15, 2008

Before: BARRY, CHAGARES, and ROTH, Circuit Judges.
_____

(Filed:   February 15, 2008)


OPINION OF THE COURT


CHAGARES, Circuit Judge.

Defendant Aaron Richardson entered conditional pleas to producing and

possessing child pornography in two related criminal cases.  Richardson appeals his

conviction and sentence, contending that the District Court improperly denied his motion to suppress the statements he made to law enforcement officials. Richardson argues that (1) law enforcement officials obtained statements from him in violation of his Fifth Amendment right to counsel and (2) his alleged waiver of his Fifth Amendment rights, his confession, and his consent to the search of his residence were given unknowingly, involuntarily, and unintelligently. We disagree and will affirm the judgments of the District Court.

## I.

As we write only for the parties, we do not set out the facts in great detail. Following reports by several parents that Richardson had molested their young children, officers from the Punxsutawney Borough Police Department contacted Richardson, and asked him to come to the police station. At the station, Police Officer Brian Andrekovich and Pennsylvania State Trooper Michael Pisarchick asked Richardson to have a seat in a small room, told him he was free to leave at any time, and read him his Miranda rights.

Richardson signed a form waiving his rights. The waiver provided: "I FULLY UNDERSTAND THE STATEMENT ADVISING ME OF MY RIGHTS AND I AM WILLING TO ANSWER QUESTIONS. I DO NOT WANT AN ATTORNEY AND I UNDERSTAND THAT I MAY REFUSE TO ANSWER QUESTIONS ANYTIME DURING THE QUESTIONING. NO PROMISES HAVE BEEN MADE TO ME, NOR HAVE ANY THREATS BEEN MADE AGAINST ME." Appendix (App.) at

2

61. The law enforcement officials then informed Richardson about the complaints parents had made against him regarding inappropriate touching of their children and questioned him about the incidents. Richardson confessed to having molested some children.

Richardson subsequently signed a consent form, and law enforcement officials searched Richardson's house and recovered a computer, video tapes, computer disks, photographs, books of child pornography, notes and diaries, as well as newspaper clippings regarding child sex abuse crimes. During the search, Richardson asked for an attorney, and the officials stopped questioning him.

In his motion to suppress, Richardson raised two claims. First, Richardson argued that during his interview at the police station he asked for an attorney, but Andrekovich and Pisarchick ignored his request and continued to interrogate him. Second, while he admitted to signing the Miranda rights waiver and consent-to-search forms, Richardson contended that Andrekovich and Pisarchick coerced his waiver, consent, and confession, and he did not understand the meaning of the forms.

After hearing testimony from Andrekovich, Pisarchick, Richardson, and others, the District Court denied Richardson's motion to suppress. In an oral ruling, the District Court concluded that defendant was timely notified of his Miranda rights, and it was therefore unnecessary to determine whether Richardson was in custody during the questioning at the police station. Contrary to Richardson's contentions, the

3

District Court found that Richardson had not requested a lawyer during his interview at the police department. The District Court further determined that Richardson voluntarily, knowingly, and intelligently decided to waive his Miranda rights, confess to his crimes, and consent to the search of his residence. The District Court found that Richardson's confession was not coerced and he "did not suffer from any type of mental deficiency which would have rendered him incapable of understanding his rights or the import of his waiver of confession or consent to search." App. 195. Based upon these findings, the District Court dismissed as moot Richardson's argument that the evidence seized from his home was the fruit of a poisonous tree.

Richardson pled guilty to possessing child pornography and to persuading minor children to engage in sexually explicit conduct for the purpose of producing videos, but retained his right to appeal the denial of his motion to suppress. This appeal followed.

## II.

We have jurisdiction pursuant to 28 U.S.C. § 1291. We review the District Court's factual findings during the suppression hearing for clear error. We have plenary review over the application of law to those facts. United States v. Lockett, 406 F.3d 207, 211 (3d Cir. 2005); United States v. Perez, 280 F.3d 318, 336 (3d Cir. 2002). "A District Court's determination of consent to search is a finding of fact." Lockett, 406 F.3d at 211 (citing Schneckloth v. Bustamonte, 412 U.S. 218, 227

4

(1973)).

III.

Richardson asserts that when he was in custody, the law enforcement officials who interrogated him failed to honor his request for counsel in violation of the Fifth Amendment, and his statements must therefore be suppressed. We disagree.

In Miranda v. Arizona, 384 U.S. 436 (1966), the Supreme Court held, *inter alia*, that statements obtained during a custodial interrogation where a person was not informed of his right to counsel or his right to remain silent were obtained in violation of the Fifth Amendment and were, therefore, inadmissible. Id. at 477-79. Statements elicited during a custodial interrogation are admissible only if a person voluntarily, knowingly, and intelligently waives his rights. Id. at 444, 475. If a person requests counsel at any point during such an interrogation, law enforcement officials must stop the questioning. Id. at 445.

At the suppression hearing, Richardson testified that during his interview at the police station, he asked "when can I get a public defender," and the law enforcement officials responded "that will be taken care of at the magistrate's office." App. 181. Both Andrekovich and Pisarchick, however, testified that Richardson did not ask for counsel during his interview at the police station. The District Court found that Richardson did not, in fact, request counsel during the interview and given that the District Court's factual finding does not constitute clear error, we conclude that

5

Richardson's argument is without merit.

IV.

Richardson admits that he signed the Miranda waiver and consent-to-search forms and confessed to molesting children, but contends that he did not do so voluntarily, knowingly, and intelligently. According to Richardson, his "mental deficiency, low intelligence, and custodial status weighed against the voluntariness of his confession, his consent to search and his alleged waiver of his Miranda rights" and his statements and the evidence seized from his home should, therefore, have been suppressed. Appellant Br. at 24. We disagree.

As noted above, a person can waive his Miranda rights, "provided the waiver is made voluntarily, knowingly, and intelligently." Miranda, 385 U.S. at 444. In order to be valid: (1) "the waiver must have been voluntary 'in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion or deception'" and (2) "the waiver 'must have been made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it.'" United States v. Velasquez, 885 F.2d 1076, 1084 (3d Cir. 1989) (quoting Moran v. Burbine, 475 U.S. 412, 421 (1986)).

Contrary to Richardson's contentions, there is no evidence in the record that law enforcement officials coerced or deceived him in order to obtain a waiver of his Fifth Amendment rights. Although Richardson had a low IQ, learning disabilities,

6

and attended special education classes, there is no evidence to support a finding that he did not have the requisite level of comprehension to understand his waiver. He was a 37-year-old high school graduate, who had held a number of jobs, including working as a bowling mechanic, a ride operator and inspector at an amusement park, a volunteer fireman, a life guard, and a volunteer in a community theater group. He had a commercial drivers' license that permitted him to drive tractor trailers and passenger buses, which he had to pass a test in order to acquire. He also had significant knowledge of computers, had set up web sites for a photography business and for an on-line shopping store he managed, and was able to replace the hard drive on his home computer. He had wired a camera system with a two-way mirror at his home. He was also familiar with the criminal justice system, due to a previous arrest for indecent exposure and a shoplifting incident. We conclude, therefore, that he waived his <u>Miranda</u> rights voluntarily, knowingly, and intelligently.

In addition, there is no evidence in the record that Richardson's confession was involuntary. We have explained that a confession is involuntary if a "defendant's will was overborne when he confessed." <u>Miller v. Fenton</u>, 796 F.2d 598, 604 (3d Cir. 1986). The Supreme Court has emphasized that "a defendant's mental condition, by itself and apart from its relation to official coercion" does not "dispose of the inquiry into constitutional 'voluntariness.'" <u>Colorado v. Connelly</u>, 479 U.S. 157, 164 (1986). In determining the voluntariness of a confession, we must assess "the effect that the totality

of the circumstances had upon the will of the defendant." Miller, 796 F.2d at 604. In doing so, we must consider a number of factors, including Richardson's age, his level of intelligence, the information he had about his constitutional rights, the length of his detention, and the nature of the questioning. Id. (quoting Schneckloth, 412 U.S. at 226). The record does not support a finding of official coercion, and the testimony at the suppression hearing makes clear that Richardson had the requisite level of intelligence to understand the import of his confession.

Finally, it is well-settled that law enforcement officials can conduct a warrantless search if consent is given voluntarily. Schneckloth, 412 U.S. at 219-22. Again, we must consider the totality of the circumstances to assess the voluntariness of the consent to search. Id. at 226-27. The same factors we analyzed in determining whether Richardson's confession was voluntary are relevant here. We must look at his consent in light of his age and maturity, education, intelligence, understanding of his constitutional rights, and the nature and duration of questioning and pressure. Id. at 225. In light of the evidence presented at the suppression hearing, we conclude that the District Court did not err in finding that Richardson voluntarily consented to the search of his house.

V.

For the foregoing reasons, we will affirm the District Court's judgments in all respects.

8