HARDIMAN, Circuit Judge,
concurring,
I concur in the result in this case. Unlike my colleagues, I would hold that the Delaware Department of Labor (DDOL) forfeited its right to argue on appeal that Delaware acted as a market participant because it failed to raise that argument in the District Court.
I
DDOL provides no explanation for its failure to raise the market participant exception to the Dormant Commerce Clause in the District Court. Nevertheless, the Majority reaches this issue because the appeal “implicates significant issues of state sovereignty” and “raises a pure question of law.” True as these conclusions are, they do not constitute “exceptional circumstances” necessary to overcome DDOL’s forfeiture of a significant argument that it could have and should have made in the District Court.[1]
At issue in this appeal are some $10,000 in wages Tri-M paid to six apprentices who worked on a state-sponsored construction project. The project has been completed, so all that remains for adjudication is who must pay this relatively modest sum. In my view, this has little or no effect on the public interest and, regardless of which side prevails, cannot rise to the level of “manifest injustice.” Accordingly, I would not excuse DDOL’s forfeiture.
If we adhere to our forfeiture doctrine in this appeal, the constitutionality of the Delaware Prevailing Wage Law can be litigated in the next case and DDOL may, if it chooses, raise the market participant exception at that time. If the issue were *433 joined and fully litigated in the District Court, we would have the benefit of a complete record and a reasoned decision by a trial judge.[2] Moreover, as the Majority rightly notes, litigants in thirty-seven other states would be free to challenge regulations granting similar benefits to instate companies. Maj. Op. at 416. As a result, district courts throughout the country would have the opportunity to review the constitutionality of a wide array of state procurement statutes, and in so doing provide appellate courts with a deeper understanding of this unsettled area of the law.[3] Cf. Bagot v. Ashcroft, 898 F.3d 252, 256 (3d Cir.2005) (deciding the merits of a forfeited claim where the “proper resolution of the legal question, though not exactly simple, [wa]s reasonably certain”).
I agree with the Majority that in some cases “the public interest is better served by addressing [an issue] than by ignoring it.” Maj. Op. at 417 (citing Barefoot Architect, Inc. v. Bunge, 632 F.3d 822, 835 (3d Cir.2011)). For instance, in Bagot v. Ashcroft, 398 F.3d 252 (3d Cir.2005), we exercised our discretion to review a deportee’s claim after finding that “failing to consider Bagot’s arguments would result in the substantial injustice of deporting an American citizen.” Id. at 256. Similarly, in United States v. Petersen, 622 F.3d 196, 202 n. 4 (3d Cir.2010), we held that, at least where the “public reputation of judicial proceedings” is at stake, we have an “institutional” interest in resolving unsettled questions regarding a defendant’s trial rights. Id. at 202 n. 4. Finally, in Bunge, we held that inadvertent mistakes, such as a party’s invocation of “the wrong definition of the tort,” does not necessarily trigger the application of the waiver doctrine. 632 F.3d at 835.
Unlike in Bagot, here I see no exigency that necessitates a prompt resolution of the market participant issue. Indeed, as noted above, a trial court’s thorough analysis of the legal and factual questions raised on appeal would be tremendously helpful in deciding this difficult issue. Moreover, the “institutional” interest in resolving this issue is minimal. There is no evidence that lower courts are reaching inconsistent results or that states are responding to the legal uncertainty by halting enforcement or repealing regulations that may be discriminatory. The fact that the issue is one of constitutional import does not alone transform it into a matter of public importance, as we have enforced waivers in weightier circumstances, including those affecting constitutional rights. See e.g., United States v. Lockett, 406 F.3d 207, 212 (3d Cir.2005) (holding that defendant waived his legal argument for “limited consent” under the Fourth and Fourteenth Amendments by failing to raise it before *434 the district court); Brennan v. Norton, 350 F.3d 399, 418 (3d Cir.2003) (finding that defendant waived his legal argument for relief under the Petition Clause).
Finally, there is no evidence in this record to suggest that Delaware’s failure to raise the market participant issue was inadvertent. Cf Bunge, 632 F.3d at 834-35. Indeed, given that the market participant doctrine has long been a recognized exception to the dormant Commerce Clause, it is unlikely that counsel for DDOL simply missed the issue. The DDOL could just as plausibly have decided to pursue an alternative theory after evaluating the relative merits of the arguments. See United States v. Nee, 261 F.3d 79, 86 (1st Cir. 2001) (“Th[e] ‘raise-or-waive rule’ prevents sandbagging; for instance, it precludes a party from making a tactical decision to refrain from objecting, and subsequently, should the case turn sour, assigning error.”) (citation omitted). Just as private litigants may not “jump from theory to theory like a bee buzzing from flower to flower,” United States v. Rose, 538 F.3d 175, 180 (3d Cir.2008) (internal citations and quotations marks omitted), a state should not be permitted to do so in the absence of truly exceptional circumstances.
For these reasons, I concur in the Court’s judgment.

. The parties describe Delaware's failure to raise the market participant exception as a "waiver.” As the Supreme Court has explained, "[w]aiver is different from forfeiture. Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the ‘intentional relinquishment or abandonment of a known right.' ” United States v. Olano, 507 U.S. 725, 733, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (quoting Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)). Under this definition, Delaware’s failure to raise this issue in the District Court is more properly characterized as a “forfeiture” than as a "waiver.”

. Although the Majority states that "we are confronted solely with a pure question of law,” Maj. Op. at 418, the opinion relies, to a large extent, on factual determinations regarding the scope of Delaware's regulatory scheme. For instance, the Majority finds that Delaware’s apprenticeship wage and training regulations "are not limited to public works projects,” because they apply, on their face, to any Delaware-registered apprentice sponsor operating in the State. The record does not reflect, however, whether the State actively regulates non-public-works projects or whether companies may opt out of the program once their contractual obligations to the State are complete. These are precisely the types of factual questions we expect a trial court to find, and our task would be made clearer if we allowed the District Court to do so in this case.

. As the Majority notes, "application of the distinction between ‘market participant' and ‘market regulator' has [] occasioned considerable dispute in the Supreme Court’s jurisprudence,” Maj. Op. at 422 n. 24, and our own jurisprudence "reflects limited opportunity to opine regarding the exception,” id. at 420.