NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-3163
_____

In re: COVENANT PARTNERS, L.P.

GARY F. SEITZ, as Chapter 7 Trustee for the Estate of Debtor Covenant Partners, L.P.,
Appellant

v.

WILLIAM B. FRETZ, JR.; JOHN P. FREEMAN
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(E.D. Pa. No. 2-17-mc-00052)
District Judge: Honorable Joel H. Slomsky
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
May 24, 2019

Before: MCKEE, SHWARTZ, and FUENTES, Circuit Judges

(Opinion filed: July 22, 2019)

_____

OPINION[*]
_____

FUENTES, *Circuit Judge.*

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

In this appeal from a bankruptcy trial before the District Court, the appellant Trustee contends that the District Court erred by concluding that defendant-appellees William Fretz, Jr. and John Freeman did not owe a duty of loyalty to debtor Covenant Partners LLP under Covenant's partnership agreement and that they did not breach their statutory duty of due care. Although the parties raise a number of issues, the appeal turns on two primary questions: (1) whether Fretz and Freeman owed a limited duty of loyalty to Covenant, and (2) whether they breached the duty of care. We conclude that under Covenant's Partnership Agreement, the duty of loyalty did not apply to Fretz and Freeman. Additionally, Fretz and Freeman did not breach their duty of care to Covenant. Thus, for the following reasons, we will affirm the District Court.

## I.  Background

Fretz and Freeman were limited partners of and controlled the general partner of Covenant Partners LLP. Covenant was a limited partnership that operated as an investment fund for Fretz, Freeman, their family, friends, and acquaintances and whose business primarily consisted of investing in "privately-held startup and growth stage companies."[1] Covenant's Limited Partnership Agreement provided in a section titled "Other Activities," in part:

> Any Partner . . . may engage in any activities, whether or not related to the business of the Partnership. . . . Each Partner agrees that any Partner . . . (a) may engage in or possess an interest, direct or indirect, in any business venture . . . independently or with others, including, without limitation, any business, industry or activity in which the Partnership may be interested in investing or may also have investments and (b) may do so without any

---

[1] JA948, 993.

obligation to report the same to the Partnership or any Partner or to afford the Partnership or any Partner any opportunity to participate therein.[2]

In March 2011, Frorer Partners, a company run by Peter Frorer, made three separate loans to Covenant, Fretz, and Freeman. Covenant borrowed $300,000 at an annual interest rate of 12%, due on November 30, 2011. As collateral, Covenant pledged 3,000,000 shares of common stock of Pet360 (formerly Pet Food Direct), a privately owned pet food retailer that Covenant held significant interest in. Fretz personally borrowed $450,000 at a 10% interest rate, also due on November 30, 2011. As collateral, he pledged 339,365 shares of Pet360 that he personally owned, along with land he owned in Costa Rica. Lastly, Freeman borrowed $50,000 at a 12% interest rate, also due on November 30, 2011. As collateral, he pledged 400,000 shares of Pet360 that he personally owned.

By the end of 2011, however, Covenant, Fretz, and Freeman all defaulted on their loans. The parties began to negotiate with Frorer, who demanded additional collateral to secure the Covenant loan. In March 2013, after more than a year of negotiations, Covenant retitled nearly three million shares in Frorer Partner's name. The following month, Covenant (at Fretz and Freeman's direction) memorialized the transfer by entering into an agreement with Frorer Partners called the "Collateral Release and Loan Extension Agreement."[3] That Agreement stated (incorrectly) that Frorer had loaned

---

[2] JA1466-67.

[3] JA1053-56. Although the Agreement bears the date of January 2, 2012, the Trustee agreed it was signed on or around April 2013. Although Fretz and Freeman dispute the authenticity of the Agreement, the District Court assumed it was authentic. We do the same.

3

Covenant $1,041,667, with $1,175,000 due in August 2013, for which Frorer held the three million shares of Pet360 as collateral. The agreement provided, however, that all shares beyond those necessary to cover the principal and interest in Covenant's loan would be returned to Covenant. Covenant did not pay back the loan in August 2013, and the next month it transferred another two million shares to Frorer Partners.

In June 2014, Frorer purported in an email to Fretz to "foreclose" on the Pet360 shares Covenant had transferred to him.[4] However, Frorer did not immediately liquidate the shares he kept. Instead, in the summer of 2014, he discovered through an inside source that Pet360 was to be acquired by PetSmart, Inc., a much larger competitor, and he began to acquire additional Pet360 shares. When Fretz and Freeman learned of Pet360's planned merger, they filed for Chapter 7 bankruptcy in order to "clawback" Covenant's Pet360 shares.[5] The bankruptcy Trustee—the appellant in this case—filed an adversarial proceeding against Frorer in Bankruptcy Court and obtained a $6,897,729 judgment. A few months later, the Trustee recovered an additional $627,054 from the settlement of a shareholder lawsuit against the board of directors of then Pet360.

The Trustee then filed this action in the Bankruptcy Court, suing Fretz and Freeman for breach of fiduciary duties. After granting the Trustee's motion to withdraw the reference to the Bankruptcy Court, the District Court concluded following a bench trial that Fretz and Freeman (1) did not owe fiduciary duties to Covenant under its

---

[4] JA276-77, 968, 1007.
[5] JA698.

Limited Partnership Agreement and (2) did not breach the duty of due care. The Trustee appealed.

## II. Standard of Review[6]

We review the District Court's findings of fact for clear error.[7] That standard is highly deferential.[8] We review the District Court's conclusions of law *de novo*.[9]

## III. Discussion

On appeal, the Trustee argues that (1) the District Court erred in concluding that Covenant's Partnership Agreement disclaimed Fretz and Freeman's duty of loyalty, and (2) Fretz and Freeman breached their duty of care by consolidating Covenant's loan from Frorer Partners with Fretz and Freeman's personal loans from Frorer Partners. For the reasons below, neither argument has merit.

### A. Covenant's Partnership Agreement Abrogated the Default Duty of Loyalty

Although Delaware has statutorily prescribed duties of loyalty and care for partners,[10] partnership agreements may alter or even eliminate the duties altogether.[11] When applicable, the default duty of loyalty requires that partners "refrain from dealing with the partnership . . . on behalf of a party having an interest adverse to the

---

[6] The District Court had jurisdiction under 28 U.S.C. § 1334. We have jurisdiction under 28 U.S.C. § 1291.

[7] *Ram Constr. Co. v. Am. States Ins. Co.*, 749 F.2d 1049, 1053 (3d Cir. 1984).

[8] *Prusky v. ReliaStar Life Ins. Co.*, 532 F.3d 252, 257 (3d Cir. 2008).

[9] *In re Merck & Co. Sec., Derivative & ERISA Litig.*, 493 F.3d 393, 399 (3d Cir. 2007).

[10] Del. Code Ann. tit. 6, § 15-404.

[11] *Cont'l Ins. Co. v. Rutledge & Co.*, 750 A.2d 1219, 1235 (Del. Ch. 2000).

partnership," and "refrain from competing with the partnership."[12]  However, "where the use of default fiduciary duties would . . . be insensible in view of the contractual mechanisms governing the transaction under consideration, the court will eschew fiduciary concepts and focus on a purely contractual analysis of the dispute."[13]

As the District Court observed, Covenant's Partnership Agreement expressly permits "[a]ny Partner" to "engage in or possess an interest . . . in which the Partnership may be interested in investing or may also have investments."[14]  We conclude that, because Covenant's Partnership Agreement allowed its partners to self-deal and have conflicts of interest with Covenant, the contractual rights in the Partnership Agreement override the default duty of loyalty.  Default fiduciary duties would be "insensible" in view of the authorization to engage in such interests.[15]  Therefore, the default statutory duty of loyalty did not apply to Fretz and Freeman.[16]

### B.      Fretz and Freeman Did Not Violate Their Limited Duty of Care

While nothing in the Partnership Agreement abrogated the statutory duty of care, which prohibits "grossly negligent or reckless conduct, intentional misconduct, or a

---

[12] Del. Code Ann. tit. 6, § 15-404(b)(2)-(3).

[13] *R.S.M. Inc. v. All. Capital Mgmt. Holdings L.P.*, 790 A.2d 478, 497 (Del. Ch. 2001).

[14] JA1467.

[15] *R.S.M. Inc.*, 790 A.2d at 497.

[16] The Trustee has waived his additional argument that Fretz and Freeman breached the duty of good faith.  "It is well settled that arguments asserted for the first time on appeal are deemed to be waived and consequently are not susceptible to review in this Court absent exceptional circumstances." *United States v. Lockett*, 406 F.3d 207, 212 (3d Cir. 2005).  Because the Trustee failed to raise a bad faith claim before the District Court and we discern no exceptional circumstances to address it on appeal, we decline to evaluate the merits of this argument.

knowing violation of law,"[17] there is no clear error in the District Court's conclusion that Fretz and Freeman did not violate that duty. The Trustee argued that Fretz and Freeman violated their duty of care because (1) they caused Covenant to pledge far more Pet360 shares than necessary to secure its loan from Frorer Partners, and (2) they caused Covenant to transfer its shares to cover their personal loans. The District Court did not clearly err in rejecting those arguments.

First, the size of the transferred Pet360 shares did not exceed the bounds of Fretz and Freeman's duties because the evidence showed that the value of those shares—in a private startup with unproven market potential—was uncertain. Although Frorer Partners redeemed the shares transferred from Covenant for approximately $0.793 per share following PetSmart's acquisition of Pet360, the shares had no predictable value before the acquisition.

Additionally, the transfer of Pet360 shares to Frorer Partners as collateral for the loan was not a violation of Fretz and Freeman's statutory duty of care, but rather a strategic decision following extensive negotiations after Frorer's demands and repeated threats to sue. The decision to transfer the Pet360 shares took into account not only the value of the shares, but also the threat of litigation, the potential loss of the shares as a result of the default, and the assurance that the shares would be returned to Covenant immediately after Covenant paid off the outstanding balance on the loan.

---

[17] Del. Code Ann. tit. 6, § 15-404(c).

Second, the District Court did not error in finding that Fretz and Freeman did not merge their personal loans from Frorer Partners with the separate loan Frorer Partners made to Covenant, or that Covenant transferred Pet360 shares to Frorer Partners to secure Fretz and Freeman's personal loans. The Trustee argued that the Collateral Release and Loan Extension Agreement consolidated the loan Frorer Partners made to Covenant with the personal loans Frorer Partners extended to Fretz and Freeman. However, the Collateral Release and Loan Extension Agreement made no mention of Fretz and Freeman's personal loans from Frorer Partners, included no language purporting to consolidate the three loans, and referenced only the three million shares[18] pledged to secure the Covenant loan. It never referenced the 339,365 shares pledged to secure the Fretz loan or the 400,000 shares pledged to secure the Freeman loan. Lastly, when Frorer subsequently assigned the three loans from Frorer Partners to himself, he referenced each of the three loans separately and included copies of each of the separate promissory notes. The District Court did not clearly err in finding that the three loans were never consolidated.

## IV.    Conclusion

For the reasons stated above, we will affirm the District Court.

---

[18] Although the Collateral Release and Loan Extension Agreement said Covenant transferred three million shares of Pet360 common stock to Frorer Partners and the parties stipulated that Covenant transferred 2,978,989 shares, we find no clear error in the District Court's inference that the parties were referring to the same group of shares.